TRANSPORTATION COMPANY v. WHEELING.

Steamboats which ply between different ports on a navigable river may, under a State statute, be taxed as personal property by the city where the company owning them has its principal office, and which is their home port, although they are duly enrolled and licensed as coasting vessels under the laws of the United States, and all fees and charges thereon, demandable under those laws, have been duly paid.

ERROR to the Supreme Court of Appeals of the State of West Virginia.

This was an action of assumpsit brought for the recovery of the tax paid under protest to the city of Wheeling, by the Wheeling, Parkersburg, and Cincinnati Transportation Company, the owner of certain steamboats used by it in navigating the Ohio between that city and Parkersburg and the intermediate places on both sides of the river, in the States of West Virginia and Ohio. The vessels were of greater burden than twenty tons, and were duly enrolled and licensed under the act of Congress. The company was incorporated under the laws of West Virginia, and its stock was partly owned in that State and partly in Ohio. Its principal office was in Wheeling. The vessels started from that city on their voyages, and when not running were laid up there. They were assessed according to their value as personal property of the company, and the tax was collected under the laws of West Virginia, authorizing the city to " assess, levy, and collect an annual tax for the use of the city on personal property in the city." The right of the State to impose a tax on such vessels was denied by the company, as in violation of art. 1, sect. 10, par. 3, of the Constitution, which declares that " no State shall, without the consent of Congress, lay any duty of tonnage," and of art. 1, sect. 8, par. 3, which provides that Congress shall have power " to regulate commerce with foreign nations and among the several States, and with the Indian tribes." The Court of Appeals of West Virginia held the tax in question not to be within these provisions of the Constitution, and affirmed the judgment in favor of the city rendered by the court of original jurisdiction. The company sued out this writ.

*Mr. Montgomery Blair* for the plaintiff in error.

National vessels, or vessels duly enrolled and licensed under the laws of the United States to carry on inter-state commerce, are not subject to State taxation. The residence of the owners is immaterial. *State Tonnage Tax Cases*, 12 Wall. 204. And in view of that and other decided cases, it must be conceded that if the tax in question had been measured by the carrying capacity or tonnage of the vessels, it would be illegal; but it is contended that the constitutional prohibition is avoided, by taxing them according to their value. The company denies this, and maintains that the doctrine is contrary to the principles established by the rulings of this court in respect to the provisions of the Constitution bearing upon the question involved.

In *Cooley* v. *Board of Wardens, &c.* (12 How. 299), it was held, in effect, that any tax operating as a charge on such vessels, even if indirectly imposed, would be a tonnage duty, although levied under the name of pilot duties or penalties, and " that it is the thing, and not the name, which is to be considered." To the same effect is *Steamship Company* v. *Port-wardens*, 6 Wall. 31. In that case, Louisiana imposed a tax of five dollars upon each vessel, without reference to its tonnage. This court held that the tax was void as a tonnage duty and as a regulation of commerce. A duty imposed on a ship by a State was declared to be within the constitutional prohibition.

It is contended by the city that this tax is not a duty on the ship, because not so *eo nomine;* and that the Constitution excepts shipping from taxation only when the law attempts to tax it by its description as shipping. Now, the vessels in question are just as much within the description of things taxed by the West Virginia statute as if it had specifically taxed them by name; for it is as ships that they are assessed, and not as so much timber and iron. As the thing is prohibited and not the name, the prohibition certainly applies here.

In support of the decision of the State court there are cited *dicta* of Mr. Justice McLean in *Passenger Cases* (7 How. 287), of Mr. Justice Clifford in *State Tonnage Tax Cases* (*supra*), and certain expressions in *Hays* v. *The Pacific Mail*

*Steamship Co.*, 17 How. 596, and in *Morgan* v. *Parkham,* 16 Wall. 473.

These *dicta* tend to sustain the views of the State court; but the question now involved is presented here for the first time, and they are in conflict with the principles actually decided by the court.

The right accorded to the States by Mr. Chief Justice Marshall, in *McCulloch* v. *Maryland* (4 Wheat. 316), to tax the interest of their citizens in the bank of the United States, whilst exempting the bank from such taxation, seems to be the origin of these *dicta*. But there is no analogy between that case and this. Shipping has not the double character of the bank as a public agency and as private property, and does not owe its exemption to any implications, which, arising from its being a public agency, exempt it only in that character from taxation leaving it subject thereto as private property, according to its value. Whilst recognized, in all respects, as private property, it is exempt by the express terms of the Constitution. This exemption extends to any form or amount of taxation upon a ship enrolled and licensed under the laws of the United States; and the reason therefor given by the court in *Steamship Company* v. *Portwardens (supra)*, is that " the prohibition upon the States levying duties upon imports and exports would have been insufficient, if it had not been extended to ships which serve as vehicles of commerce." In *Gibbons* v. *Ogden* (9 Wheat. 1), the language of the court is, " A duty of tonnage is as much a tax as a duty on imports or exports, and the reason which ensured the prohibition of these taxes extends to this also." Hence all the reasoning which the court has applied to prevent any State taxation upon imports by " varying the form without varying the substance," is equally applicable to inhibit the States from imposing any tax upon shipping.

The argument in *Brown* v. *Maryland* (9 Wheat. 419), in favor of the right of the States to tax imports, is substantially that by which the validity of the tax in question is sought to be maintained; namely, that the tax was a personal one, and that only " an import tax " was prohibited. The court declared the tax to be illegal, because *it operated as a tax on imports,* and they

were not subject to any form of State taxation. Now, as shipping is put by the Constitution precisely upon the same footing as imports, any tax upon property, whilst it continues in the form of shipping, is as illegal as a tax upon property whilst it remains in the condition of imports.

The fact that the vessels were assessed in their home port is immaterial. A tonnage tax assessed there has been held to be prohibited ; and as the prohibition is not limited to a tonnage tax strictly so called, but extends to any duty, whether imposed directly or indirectly, or in any manner upon a ship, the principle involved here would seem to have been decided for the company.

Nor does it affect the question that vessels are not enumerated in the tax law as subjects of taxation. If exempt at all, they would be equally so by their description as personal property as by their description as ships, — it being held by this court that the prohibition forbids not only " a duty proportioned to the tonnage of the vessels," but " any duty on the ship." It is, therefore, unrestricted. They are the tools of that foreign and inter-state trade which it was intended to withdraw absolutely from State control, and, like the mechanic's tools, which the States have exempted from taxation, are as exempt from a general tax on personal property as from a specific duty on the articles.

Whether the vessels be taxed as personal property or specifically, the effect is to tax foreign and inter-state commerce.

If it be urged that as the tax is proportioned to the value of the vessel, and forms a part only of the common burden imposed upon personal property within the State, commerce cannot be injuriously affected by it, we reply in the language of the court in *Brown* v. *Maryland*, to the suggestion that the State might be trusted not to tax imports or exports to its own prejudice, that the Constitution has not left the question open.

No counsel appeared for the defendant in error.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Power to impose taxes for legitimate purposes resides in the States as well as in the United States ; but the States cannot, without the consent of Congress, lay any duty of tonnage, nor

can they levy any imposts or duties on imports or exports except what may be absolutely necessary for executing their inspection laws, as without the consent of Congress they are prohibited from exercising any such power.  Outside of those prohibitions the power of the States extends to all objects within their sovereign power, except the means and instruments of the Federal government.  *State Tonnage Tax Cases*, 12 Wall. 204.

Taxes levied by a State upon ships or vessels as instruments of commerce and navigation are within the clause of the Constitution which prohibits the States from levying any duty of tonnage without the consent of Congress; and it makes no difference whether the ships or vessels taxed belong to the citizens of the State which levies the tax or to the citizens of another State, as the prohibition is general, withdrawing altogether from the States the power to lay any duty of tonnage under any circumstances, without the consent of Congress.

Pending the controversy in the subordinate State court, the parties by consent filed in the case an agreed statement of facts, from which and the pleadings it appears that the plaintiffs commenced an action of assumpsit against the defendants to recover back certain sums of money which the latter involuntarily paid to the former as taxes wrongfully assessed, as they allege, upon four certain steamboats which they owned, and which for four years or more they employed in carrying passengers and freight between the port of Wheeling and other ports on the Ohio River.

It appears that the plaintiffs are an incorporated company organized under the law of the State, and that the defendants are a municipal corporation chartered as a city under the law of the same State.  Authority is vested in the city to assess, levy, and collect an annual tax, under such regulations as they may prescribe by ordinance, for the use of the city, on personal property in the city, not to exceed in any one year fifty cents on every one hundred dollars of the assessed valuation thereof.  By the same law it is provided that personal property shall be deemed to include all subjects of taxation which the assessors, acting under the laws of the State, are or shall be by law required to enter on their books as such property for the purpose of State taxation.  Pursuant to that law, taxes were assessed

for the several years mentioned against the plaintiffs for the appraised value of the four steamboats and the furniture of the same, which they owned and used as aforesaid, it appearing that the plaintiffs' principal place of business was Wheeling, and that three of the steamboats were usually lying at the wharf or at the bank of the river within the corporate limits of the city.

Throughout the whole period each of the steamboats was duly enrolled and licensed as coasting vessels under the laws of the United States, and the agreed statement shows that the plaintiffs paid for each all dues, fees, and charges which were properly demandable under those laws. Payment of the taxes was made under protest and in order to escape the seizure and sale of the steamboats.

Service was made, and the parties having waived a jury and filed an agreed statement of facts as before stated, submitted the case to the court of original jurisdiction. Hearing was had, and the court rendered judgment in favor of the defendants. Exceptions were filed by the plaintiffs, and they removed the case into the supreme court of the State, called the Court of Appeals, where the judgment of the subordinate court was affirmed. Though defeated in both of the State courts, the plaintiffs sued out the present writ of error and removed the cause into this court.

Since the transcript was entered here, the plaintiffs have assigned for error that the State Court of Appeals erred in holding that the taxes levied are not within the constitutional prohibition that no State, without the consent of Congress, shall lay any duty of tonnage.

Ships or vessels of ten or more tons burden, duly enrolled and licensed, if engaged in commerce on waters which are navigable by such vessels from the sea, are ships and vessels of the United States, entitled to the privileges secured to such vessels by the act for enrolling and licensing ships or vessels to be employed in the coasting trade. 1 Stat. 205, 287.

Authorities to show that the States are prohibited from subjecting any such ship or vessel to any duty of tonnage is scarcely necessary, as that proposition is universally admitted;

the only question which can properly arise in the case presented for decision being whether the tax as imposed by State authority is or is not a tonnage duty, within the meaning of the Constitution. Tonnage duties cannot be levied; but it is too well settled to admit of question that taxes levied by a State, upon ships or vessels owned by the citizens of the State, as property, based on a valuation of the same as property, to the extent of such ownership, are not within the prohibition of the Constitution.

Power to tax for the support of the State governments exists in the States independently of the national government; and it may well be assumed that where there is no cession of contradictory or inconsistent jurisdiction in the United States, nor any restraining compact in the Constitution, the power in the States to tax for the support of the State authority reaches all the property within the State which is not properly regarded as the instruments or means of the Federal government. *Nathan* v. *Louisiana*, 8 How. 73 ; *Brown* v. *Maryland*, 12 Wheat. 419 ; *Weston* v. *City Council of Charleston*, 2 Pet. 449.

Beyond question these authorities show that all subjects over which the sovereign power of a State extends are objects of taxation, the rule being that the sovereignty of a State extends to every thing which exists by its own authority or is introduced by its permission, except those means which are employed by Congress to carry into execution the powers given by the people to the Federal government, whose laws, made in pursuance of the Constitution, are supreme. *McCulloch* v. *Maryland*, 4 Wheat. 429 ; *Savings Society* v. *Coite*, 6 Wall. 604.

Annual taxes upon ships and vessels for the support of the State governments as property, upon a valuation as other personal property, are everywhere laid ; nor is it believed that it requires much argument to prove that the opposite theory is unsound and indefensible in principle, as it is contrary to the generally received opinion, and wholly unsupported by any judicial determination. Instead of that, there are many cases in which the courts, in refuting the authority of the States to lay duties of tonnage, have admitted that the owners of ships may be taxed to the extent of their interest in the same, for the value of the property. Assessments of the kind, when

levied for municipal purposes, must be made against the owner of the property, and can only be made in the municipality where the owner resides.

Though a ship, when engaged in the transportation of passengers, said Mr. Chief Justice Taney, is a vehicle of commerce, and within the power of regulation granted to Congress, yet it has always been held that the power to regulate commerce, as conferred, does not give to Congress the power to tax the ship, nor prohibit the State from taxing it as the property of the owner, when he resides within their own jurisdiction; and he adds, that the authority of Congress to tax ships is derived from the express grant of power in the eighth section of the first article, to lay and collect taxes, duties, imports, and excises; and that the inability of the States to tax the ship as an instrument of commerce arises from the express prohibition contained in the tenth section of the same article. *Passenger Cases*, 7 How. 283, 479.

Support to that view is also derived from one of the numbers of the Federalist, which has ever been regarded as entitled to weight in any discussion as to the true intent and meaning of the provisions of our fundamental law. It is there maintained that no right of taxation which the States had previously enjoyed was surrendered, unless expressly prohibited; and that the right of the States to tax was not impaired by any affirmative grant of power to the general government; that duties on imports were a part of the taxing power; and that the States would have had a right, after the adoption of the Constitution, to lay duties on imports and exports if they had not been expressly prohibited from doing so by that instrument. Federalist, No. 32. From which it follows, if the writer of that publication is correct, that the power granted to regulate commerce did not prohibit the States from laying import duties upon merchandise imported from foreign countries; that the commercial clause does not apply to the right of taxation in either sovereignty, the taxing power being a distinct and separate power from the power to regulate commerce; and that the right of taxation in the States remains over every subject where it before existed, with the exception only of those expressly or impliedly prohibited.

Neither imposts nor duties on imports or exports can be levied by a State, except what may be absolutely necessary for executing its inspection laws, nor can a State levy any duty of tonnage without the consent of Congress. State power of taxation is doubtless very comprehensive; but it is not without limits, as appears from what has already been remarked, to which it may be added, that State tax laws cannot restrain the action of the national authority, nor can they abridge the operation of any law which Congress may constitutionally pass. They may extend to every object of value not excepted as aforesaid, within the sovereignty of the State; but they cannot reach the means and instruments of the Federal government, nor the administration of justice in the Federal courts, nor the collection of the public revenue, nor interfere with any constitutional regulation of Congress.

Power to tax its citizens or subjects in some form is an attribute of every government, residing in it as part of itself; and hence it follows that the power to tax may be exercised at the same time upon the same objects of private property by the State and by the United States, without inconsistency or repugnancy. *McCulloch* v. *Maryland, supra; Providence Bank* v. *Billings*, 4 Pet. 514.

Such power exists in the State as one conferred or not prohibited by the State Constitution, and in the Congress by express grant. Hence the existence of such powers is perfectly consistent, though the two governments in exercising the same act entirely independent of each other as applied to the property of the citizens.

Legislative power to tax, as a general proposition, extends to all proper objects of taxation within the sovereign jurisdiction of a State; but the power of a State of the Union to lay taxes does not extend to the instruments of the national government, nor to the constitutional means to carry into execution the powers conferred by the Federal Constitution. Tax laws of the State cannot restrain the action of the national government, nor can they circumscribe the operation of any constitutional act of Congress. They may extend to every object of value belonging to the citizen within the sovereignty of the State, not within the express exemptions of the Consti-

tution, or those which are necessarily implied as falling within the category of means or instruments to carry into execution the powers granted by the fundamental law. *Day* v. *Buffington*, 3 Cliff. 387.

Power to levy taxes, said Mr. Chief Justice Marshall, could not be considered as abridging the right of the States on that subject, it being clear that the States might have exercised the power to levy duties on imports or exports had the Constitution contained no prohibition upon the subject; from which he deduces the proposition that the prohibition is an exception from the acknowledged power of the States to levy taxes, and that the prohibition is not derived from the power of Congress to regulate commerce. *Gibbons* v. *Ogden*, 9 Wheat. 201.

States, said Mr. Justice McLean, cannot regulate foreign commerce; but he held in the same case that they may tax a ship or other vessel used in commerce the same as other property owned by its citizens, or they may tax the stages in which the mail is transported, as that does not regulate the conveyance of the mail any more than the taxing the ship regulates commerce, though he admitted that the tax in both instances affected in some degree the use of the property, which undoubtedly is correct. *Passenger Cases, supra.*

Enrolled vessels engaged in conveying passengers and freight, which were owned by citizens of the State of New York, entered the port of San Francisco, and while there were compelled to pay certain taxes. Payment having been made under protest, the owners of the vessels brought suit to recover back the amount; and Mr. Justice Nelson, in disposing of the case here, in behalf of the court, held " that the vessels were not in any proper sense abiding within the limits of California so as to become incorporated with the other personal property of the State; that they were there but temporarily engaged in lawful trade and commerce, with their *situs* at the home port, where the vessels belonged and where the owners were liable to be taxed for the capital invested, and where the taxes had been paid,"— which shows to a demonstration that the owners of ships and vessels are liable to taxation for their interest in the same upon a valuation as for other personal property. *Hays* v. *Pacific Mail Steamship Co.*, 17 How. 596.

Ships, when duly registered or enrolled, are instruments of commerce, and are to be regarded as means employed by the United States in execution of the powers of the Constitution, and therefore they are not subject to State regulations. *Sinnot* v. *Davenport*, 22 id. 227.

Such instruments or means are not given by the people of a particular State, but by the people of all the States, and upon principle as well as authority should be subjected to that government only which belongs to all.

Taxation, beyond all doubt, is the exercise of a sovereign power, and it must be admitted that all subjects over which the sovereign power of a State extends are objects of taxation; but it is equally clear that those objects over which it does not extend are exempt from State taxation, — from which it follows that the means and instruments of the general government are exempt from taxation. *McCulloch* v. *Maryland, supra.*

Tonnage duties on ships by the States are expressly prohibited, but taxes levied by a State upon ships or vessels owned by the citizens of the State as property, based on a valuation of the same as property, are not within the prohibition, for the reason that the prohibition, when properly construed, does not extend to the investments of the citizens in such structures.

Duties of tonnage, says Cooley, the States are forbidden to lay; but he adds that the meaning of the prohibition seems to be that vessels must not be taxed as vehicles of commerce, according to capacity, it being admitted that they may be taxed like other property. Cooley, Const. Lim. (4th ed.) 606.

"Vessels are taxable as property," says the same author; and he adds that "possibly the tax may be measured by the capacity, when they are taxed only as property and not as vehicles of commerce;" which may be true if it clearly appears that the tax is to the owner in the locality of his residence, and is not a tax upon the ship as an instrument of commerce. Cooley, Taxation, 61.

"Whatever more general or more limited view may be entertained of the true meaning of this clause," says Mr. Justice Miller, "it is perfectly clear that a duty, tax, or burden imposed under the authority of the State, which is by the law imposing it to be measured by the capacity of the vessel, and

is in its essence a contribution claimed for the privilege of arriving and departing from a port in the United States, is within the prohibition." *Cannon* v. *New Orleans*, 20 Wall. 577 ; *Peete* v. *Morgan*, 19 id. 581 ; *State Tonnage Tax Cases*, *supra*.

Decided cases of the kind everywhere deny to the States the power to tax ships as the instruments of commerce, but they all admit, expressly or impliedly, that the State may tax the owners of such personal property for their interest in the same. Corresponding views are expressed by Mr. Burroughs in his valuable treatise upon Taxation. He says that vessels of all kinds are liable to taxation as property in the same manner as other personal property owned by citizens of the State ; that the prohibition only comes into play where they are not taxed in the same manner as the other property of the citizens, or where the tax is imposed upon the vessel as an instrument of commerce, without reference to the value as property. Burroughs, Taxation, 91 ; *Johnson* v. *Drummond*, 20 Gratt. (Va.) 419.

Property in ships and vessels, say the Court of Appeals of Maryland, before the Federal Constitution was adopted, was within the taxing power of the State ; and they held that such property since that time, when belonging to a citizen of the State living within her territory and subject to her jurisdiction, and protected by her laws, is a part of his capital in trade, and, like other property, is the subject of State taxation. *Howell* v. *The State*, 3 Gill (Md.), 14 ; *Perry* v. *Torrence*, 8 Ohio, 522.

Beyond all doubt, the taxes in this case were levied against the owners as property, upon a valuation as in respect to all other personal property, nor is it pretended that the taxes were levied as duties of tonnage. Congress has prescribed the rates of measurement and computation in ascertaining the tonnage of American ships and vessels, and in the light of those regulations Burroughs says that the word "tonnage" means the contents of the vessel expressed in tons, each of one hundred cubical feet. p. 89.

Homans says that the word has long been an official term, intended originally to express the burden that a ship would carry, in order that the various dues and customs levied upon

shipping might be imposed according to the size of the vessel, or rather in proportion to her capability of carrying burden. Homan's Dict., Com. and Nav., Tonnage.

Tested by these definitions and the authorities already cited, it is as clear as any thing in legal decision can be, that the taxes levied in this case are not duties of tonnage, within the meaning of the Federal Constitution. Taken as a whole, the contention of the plaintiffs is not that the taxes in question are duties of tonnage, but their proposition is that ships and vessels, when duly enrolled and licensed for the coasting trade, are not subject to State taxation in any form, and that the owners of the vessels cannot be taxed for the same as property, even when valued as other personal property, as the basis of State or municipal taxation.

Opposed as that theory is to the settled rule of construction, that the commercial clause of the Constitution neither confers, regulates, nor prohibits taxation, it is not deemed necessary to give the theory much further consideration. *Gibbons* v. *Ogden, supra.* By that authority it is settled that the power to tax, and the power to regulate and prohibit taxation, are given in the Constitution by separate clauses, and that those powers are altogether separate and distinct from the power to regulate commerce; from which it follows, as a necessary consequence, that the enrolment of a ship or vessel does not exempt the owner of the same from taxation for his interest in the ship or vessel as property, upon a valuation of the same, as in the case of other personal property.

*Judgment affirmed.*