YOST, County Treasurer, v. LAKE ERIE TRANSP. CO.

(Circuit Court of Appeals, Sixth Circuit. December 16, 1901.)

No. 959.

1. TAXATION—JURISDICTION OF STATE—SITUS OF PERSONAL PROPERTY.
     To enable a state to impose a valid tax upon personal property, it must have jurisdiction over the owner, or the property must have acquired a situs therein, separate from the owner's domicile, for the purposes of taxation.

2. SAME—REGISTERED VESSELS ENGAGED IN INTERSTATE COMMERCE—SITUS FOR TAXATION.
     Vessels engaged in interstate or foreign commerce, owned by a corporation of a state, which are registered under the laws of the United States, and have the name of their home port in such state painted on their stern, as required by Rev. St. § 4178, have their situs, for the purposes of taxation, at such home port, and cannot be taxed as property in another state.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Henry B. Thompson, for plaintiff in error.

Alexander L. Smith and Harvey D. Goulder, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge. This case involves the situs for purposes of local taxation of vessel property owned by a Michigan corporation. The action was brought under section 2781, Rev. St. Ohio, by the treasurer of Lucas county, Ohio, in a common pleas court of Lucas county, to recover a judgment for $33,961.33 alleged to be due for taxes assessed against the Lake Erie Transportation Company, a corporation organized under the laws of Michigan, as the owner of four lake steamers. The taxes claimed were for the years 1893 to 1898, inclusive, and include a penalty of 50 per cent. The petition also sought to collect $1,698.07 as an additional collection fee due to the plaintiff. The suit was removed, upon diversity of citizenship, to the circuit court of the United States for the Western division of the Northern district of Ohio. The defendant denied its liability to be assessed in Ohio upon its said property. The issues were submitted to a jury, who, by direction of the court, returned a verdict for the defendant. The effort of the Ohio taxing officers is not to tax the steamers owned by the Lake Erie Transportation Company through the owning corporation, for that is confessedly a corporation organized under the law of Michigan, and therefore domiciled in that state, but to tax the steamers themselves as tangible personal property which has acquired an actual situs at Toledo, in Ohio, a situs for purpose of taxation

wholly independent of the domicile of the owning corporation. It is not denied that, unless either the property or its owner was within the state of Ohio, the state was without jurisdiction to tax either the one or the other. "When there is jurisdiction neither as to person nor property, the imposition of a tax would be ultra vires and void. If the legislature of a state should enact that the citizens or property of another state or country should be taxed in the same manner as the persons and property within its own limits and subject to its authority, or in any other manner whatsoever, such a law would be as much a nullity as if in conflict with the most explicit constitutional inhibition. Jurisdiction is as necessary to valid legislative as to valid judicial action." City of St. Louis v. Wiggins Ferry Co., 11 Wall. 423, 430, 20 L. Ed. 192.

For many purposes tangible personal property is deemed to have no situs apart from its owner. But this fiction is always made to yield where the purposes of justice require that the actual status of the movable be regarded, as where dominion is asserted by the government of the place of actual situation of such property. Walker v. Jack, 31 C. C. A. 462, 88 Fed. 576; Green v. Van Buskirk, 7 Wall. 139, 150, 19 L. Ed. 109; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 22, 11 Sup. Ct. 876, 878, 35 L. Ed. 613, 616. In the case last cited it was said:

"For purposes of taxation, as has been repeatedly held by this court, personal property may be separated from its owner, and he may be taxed on its account at the place where it is, although not the place of his own domicile, and even if he is not a citizen or resident of the state which imposes the tax."

The vessels upon account of which the defendant is sought to be taxed are four lake steamers which have for many years been engaged in interstate commerce on the Great Lakes. They are all owned by the Erie Transportation Company, a duly-organized corporation of the state of Michigan. The general office of that corporation is stated in its certificate of incorporation, as required by the law of Michigan, to be Monroe, in said state. The vessels themselves all hail from the port of Monroe, and their names and home port are painted on the stern, as required by sections 4178, 4334, Rev. St. U. S. The vessels are registered at Detroit, in the state of Michigan; Detroit being a place within the collection district which includes Monroe, the home port. Rev. St. U. S. § 4141. The mere fact that property is employed in interstate commerce will not prevent a state from taxing it as other property within its dominion and jurisdiction. Sanford v. Poe, 16 C. C. A. 305, 69 Fed. 546; Delaware R. Tax, 18 Wall. 232, 21 L. Ed. 888; Western Union Tel. Co. v. Massachusetts, 125 U. S. 530, 539, 8 Sup. Ct. 961, 31 L. Ed. 790; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 23, 11 Sup. Ct. 876, 35 L. Ed. 613; Adams Express Co. v. Ohio, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683.

But in the examination of the question as to whether movable property has acquired a situs at a place not the domicile of the owner a very obvious distinction must be recognized between vessel property engaged in the navigation of interstate waters and other tangible personal property having a permanent situs. Thus,

apart from the rule that personal property follows its owner, congress has given to vessel property a situs or home port by the provisions of sections 4178, 4141, Rev. St. By section 4178 every registered vessel is required to have the name of her home port painted legibly on her stern; and by section 4141 the port to which such vessel belongs is defined as being that port "at or nearest to which the owner, if there be but one, or, if more than one, the husband or acting and managing owner of such vessel, usually resides." These vessels had but one owner, the Erie Transportation Company. That corporation must reside within the state of Michigan. "A corporation may do business elsewhere, but it must reside at home." By the local law of Michigan it is deemed, for the purposes of the state, to have its habitat or domicile at a place fixed by the articles of incorporation. That place was Monroe, and the port "at or nearest to which the owner * * * usually resides" is the port of Monroe. Accordingly, the port of Monroe is by the act of congress the home port of these vessels and their situs as fixed by the act of congress.

But vessels intended for interstate or foreign commerce are not constructed or acquired for the purpose of remaining in their home or any other port. Their value consists in their use in actual navigation, and their presence in port is, in the very nature of the property, incidental and temporary. This distinction between vessel property and other movables is of controlling importance in determining the domicile of registered water craft engaged in interstate and foreign commerce for purposes of taxation, and the rule seems now settled in courts of the United States, and by the weight of opinion in the state courts, that registered water craft engaged actually in interstate or foreign commerce are only subject to property taxation at their home port, which, under the act of congress, is that port nearest to the domicile of the owner. Rev. St. U. S. § 4141. Hays v. Steamship Co., 17 How. 596, 15 L. Ed. 254; City of St. Louis v. Wiggins Ferry Co., 11 Wall. 423, 20 L. Ed. 192; Morgan v. Parham, 16 Wall. 471, 21 L. Ed. 303; Transportation Co. v. Wheeling, 99 U. S. 273, 25 L. Ed. 412; Moran v. City of New Orleans, 112 U. S. 69, 5 Sup. Ct. 38, 28 L. Ed. 653; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 23, 11 Sup. Ct. 876, 35 L. Ed. 613; People v. Commissioners of Taxes and Assessments for City and County of New York, 58 N. Y. 242; Roberts v. Township of Charlevoix, 60 Mich. 197, 26 N. W. 878; Johnson Co. v. De Bary-Baya Merchants' Line (Fla.) 19 South. 640; Graham v. Township of St. Joseph, 67 Mich. 652, 35 N. W. 808.

The distinction between the nature of vessel property engaged in the navigation of the sea or interstate waters and the movable property of a railroad company employed in interstate commerce was pointed out by Mr. Justice Gray in Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 23, 11 Sup. Ct. 876, 878, 35 L. Ed. 613, 616, where the justice said:

"Ships or vessels, indeed, engaged in interstate or foreign commerce upon the high seas, or other waters which are a common highway, and having

their home port, at which they are registered under the laws of the United States, at the domicile of their owners in one state, are not subject to taxation in another state, at whose ports they incidentally and temporarily touch for the purpose of delivering or receiving passengers or freight. But that is because they are not, in any proper sense, abiding within its limits, and have no continuous presence or actual situs within its jurisdiction, and therefore can be taxed only at their legal situs, their home port and the domicile of their owners. Hays v. Steamship Co., 17 How. 596, 15 L. Ed. 254; City of St. Louis v. Wiggins Ferry Co., 11 Wall. 423, 20 L. Ed. 192; Morgan v. Parham, 16 Wall. 471, 21 L. Ed. 303; Wiggins Ferry Co. v. City of East St. Louis, 107 U. S. 365, 2 Sup. Ct. 257, 27 L. Ed. 419; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158. Between ships and vessels having their situs fixed by act of congress, and their course over navigable waters, and touching land only incidentally and temporarily, and cars or vehicles of any kind, having no situs so fixed, and traversing the land only, the distinction is obvious."

In Moran v. City of New Orleans, 112 U. S. 69, 74, 5 Sup. Ct. 38, 40, 28 L. Ed. 653, 655, Justice Matthews, having regard to this distinction and to the difference between a tax upon vessels as property and a burden otherwise imposed, said:

"And it is undoubtedly true, as it has often been judicially declared, that vessels engaged in foreign or interstate commerce, and duly enrolled and licensed under the acts of congress, may be taxed by state authority as property; provided the tax be not a tonnage duty, is levied only at the port of registry, and is valued as other property in the state, without unfavorable discrimination on account of its employment. Transportation Co. v. Wheeling, 99 U. S. 273, 25 L. Ed. 412; Morgan v. Parham, 16 Wall. 471, 21 L. Ed. 303; Hays v. Steamship Co., 17 How. 596, 15 L. Ed. 254; Wiggins Ferry Co. v. City of East St. Louis, 107 U. S. 365, 2 Sup. Ct. 257, 27 L. Ed. 419."

In Hays v. Steamship Co., 17 How. 596, 15 L. Ed. 254, the question first arose as to the situs of vessels engaged in foreign commerce for purposes of property taxation. The vessels in question belonged to a New York corporation, and were duly registered in the port of New York City, which was their home port. It was sought to subject these steamships to taxation in California as localized tangible personal property. The principal office of the company was in New York City, and all of the stockholders of the company resided there, and the vessels were there registered and taxed as local property. Agencies were maintained at San Francisco and at other ports, and a naval dock and shipyard for the furnishing and repair of the company's ships was maintained at Benecia, in California. The ships sought to be taxed as property having a situs in California were engaged in the transportation of passengers and merchandise between the city of New York and San Francisco, by the way of Panama, and between San Francisco and ports in Oregon. The court, among other things, said:

"Now, it is quite apparent that, if the state of California possessed the authority to impose the tax in question, any other state in the Union, into the ports of which the vessels entered in the prosecution of their trade and business, might also impose a like tax. It may be that the course of trade or other circumstances might not occasion as great a delay in other ports on the Pacific as at the port of San Francisco. But this is a matter accidental, depending on the amount of business to be transacted at the particular port, the nature of it, necessary repairs, etc., which in no respect can affect the question as to the situs of the property, in view of the right of

taxation by the state. Besides, whether the vessel, leaving her home port for trade and commerce, visits, in the course of her voyage or business, several ports, or confines her operations in the carrying trade to one, are questions that will depend upon the profitable returns of the business, and will furnish no more evidence that she has become a part of the personal property within the state and liable to taxation at one port than at the others. She is within the jurisdiction of all or any of them temporarily, and for a purpose wholly excluding the idea of permanently abiding in the state or changing her home port. Our merchant vessels are not unfrequently absent for years, in the foreign carrying trade, seeking cargo, carrying and unlading it from port to port, during all the time absent; but they neither lose their national character nor their home port, as inscribed upon their stern. The distinction between a vessel in her home port and when lying at a foreign one or in the port of another state is familiar in the admiralty law, and she is subjected, in many cases, to the application of a different set of principles. Peyroux v. Howard, 7 Pet. 324, 8 L. Ed. 700; The General Smith, 4 Wheat. 438, 4 L. Ed. 609. We are satisfied that the state of California had no jurisdiction over these vessels for the purpose of taxation. They were not, properly, abiding within its limits, so as to become incorporated with the other personal property of the state. They were there but temporarily engaged in lawful trade and commerce with their situs at the home port, where the vessels belonged, and where the owners were liable to be taxed for the capital invested, and where the taxes had been paid."

In Morgan v. Parham, 16 Wall. 472, 21 L. Ed. 303, it was held that the steamer Frances, owned and registered in the port of New York, was not subject to be taxed at the port of Mobile, in Alabama, although it appeared that she had been brought to Mobile five years before, and had from that time been, with other vessels, one of a coast line plying daily between Mobile and New Orleans, and had been enrolled at Mobile as a coaster. It appeared that while the owner of the vessel continued to reside in New York the master of the Frances resided at Mobile, and that an agent of the vessel had an office at Mobile, and had there assistants, but that the Mobile agency was subordinate to a superior agent residing in New Orleans, who employed and paid the captain and other officers of the vessel. After holding that the status of the vessel had not been affected as a vessel registered at the port of the domicile of her owner by her enrollment as a coaster at Mobile, and that the latter act in no way gave her a local situs for purposes of taxation, the court said:

"It is the opinion of the court that the state of Alabama had no jurisdiction over this vessel for the purpose of taxation, for the reason that it had not become incorporated into the personal property of that state, but was there temporarily only, and that it was engaged in lawful commerce between the states with its situs at the home port of New York, where it belonged and where its owner was liable to be taxed for its value. The case of Hays v. Steamship Co. is decisive of the case before us. * * * This vessel (the Frances) remained the property of the plaintiff, with her home port at New York, and had never become blended with the commerce and property of the state of Alabama, within the principles of People v. Commissioners of Taxes and Assessments of City and County of New York. The vessel touches triweekly or daily at Mobile, and the same at New Orleans. If her regular route were from New Orleans to Mobile, thence to St. Augustine, thence to Savannah, thence to Charleston, and returning by the same course, the case would be no different. She would be engaged in interstate commerce, with her home port still remaining unchanged, and the property continuing unmixed with the permanent property of either state. Her right to trade at each of those ports without molestation by

either of these states is secured by the constitution of the United States. The federal authority has been exerted by the passage of the navigation laws and the issuing of a coasting license to this vessel. All state interference is thereby excluded. Whether the steamer Frances was actually taxed in New York during the years 1866 and 1867 is not shown by the case. It is not important. She was liable to taxation there. That state alone had dominion over her for that purpose. Alabama had no more power to tax her or her owner than had Louisiana, or than Florida, Georgia, and South Carolina would have had in the case I have supposed."

The weight of opinion in the state courts gives support to the general rule we have stated. Graham v. Township of St. Joseph, 67 Mich. 652, 35 N. W. 808; People v. Commissioners of Taxes and Assessments for City and County of New York, 58 N. Y. 242; Johnson v. De Bary-Baya Merchants' Line (Fla.) 19 South. 640. National Dredging Co. v. State, 99 Ala. 462, 12 South. 720, has been cited as holding a different rule. A tax imposed by Alabama upon a dredging boat, five mud scows, and a tug boat, used in connection with the scows and dredging boat, was held to be valid notwithstanding the boats were owned in Delaware, and that the tug was registered at the port of Wilmington. The ground of the decision was that the property was permanently located and used for dredging purposes wholly within the state of Alabama. The Alabama court undertook to distinguish the case upon its facts from the class of cases holding that vessel property engaged in navigating from port to port is taxable only at its home port or port of registration. The facts were peculiar, especially in respect to the dredging boat and mud scow, which could hardly be regarded as engaged in any kind of navigation, although capable of being moved from port to port. The contention in the case at bar in the court below was that the vessels owned by the Erie Transportation Company had been so permanently used and located at the port of Toledo as to acquire a situs there as part of the local movable property there existing. There was evidence that a majority of the directors and officers of the corporation resided at Toledo, and that the general manager had his office and a force of clerks there. It was also shown that the steamers generally, though not always, wintered at that port, and that the officers and crews were there employed and discharged. It was also shown that none of these steamers had ever been in the port of Monroe, and that they could not get nearer than four or five miles of that port, and that the only property of the company at Monroe was a tin sign on the office door of a lumber company, and that since 1893 not a meeting of the company had been held at Monroe. On the other hand, it was shown that the steamships in question were engaged in navigating between Toledo, in Ohio, and Buffalo, in New York, though sometimes one or more of them were operated between Buffalo and Lake Superior points, and between Toledo and Erie, a Pennsylvania port. It was also shown that the company also kept an office and force of clerks at Buffalo. It is clear upon these facts that these boats were engaged in interstate navigation, and that their stay in port was incidental and temporary. That they as a rule laid up in Toledo when, through the rigor of the season, navigation was

closed, and that their general manager had his office there, does not, in our judgment, operate to give them any such permanency of location as to subject them to taxation as property having a situs there.

The New York court of appeals in People v. Commissioners of Taxes and Assessments for City and County of New York, 58 N. Y. 242, 246, in discussing the uncertainty of the taxing situs of vessels engaged in interstate or foreign commerce if the situs fixed by the registration was to be disregarded, said:

"To determine their situs, for purposes of taxation, by their longer or shorter stay in a particular port, or by their more or less frequent resort to it, would introduce perpetual uncertainty. It would practically subject them to taxation in every port or exempt them in all. We are of opinion that the rule adopted in the cases in the United States courts, and followed in the judgment appealed from, is the better rule, and is in accordance with the statutes regulating taxation in this state."

This property has not become so blended with the business and property of Ohio as to become a part of the mass of property having a local situs within that state. They continued to be of and as in the state of Michigan, and are not subject to taxation by the state of Ohio.

The judgment is accordingly affirmed.