Vol. 117]    SEPTEMBER TERM, 1903.    161

Commonwealth, ex rel. Lucas v. Ayer & Lord Tie Co.

CASE 17—PROCEEDING BY THE COMMONWEALTH BY FRANK A. LUCAS, AUDITOR'S AGENT, AGAINST THE AYER & LORD TIE COMPANY, TO ENFORCE THE LISTING FOR TAXATION OF CERTAIN STEAMBOATS OWNED BY SAID COMPANY ENGAGED IN INTERSTATE COMMERCE ON CERTAIN RIVERS.—DEC. 17.

# Commonwealth, ex rel. Lucas v. Ayer & Lord Tie Co.

117   161
e134  419

### APPEAL FROM M'CRACKEN CIRCUIT COURT.

FROM A JUDGMENT FOR DEFENDANT THE RELATOR APPEALS.   REVERSED.

TAXATION— VESSELS ENGAGED IN INTERSTATE COMMERCE—SITUS — HOME PORT—STATUTE—REMOVAL OF CAUSE—DIVERSITY OF CITIZENSHIP—STATE—REGISTRATION.

Held:  1. Rev. St. U. S., sections 4178, 4334 [U. S. Comp. St., 1901, pp. 2830, 2968], in reference to the port of registered and licensed vessels, as amended by Act Cong. June 26, 1884, c. 121, section 21, 23 Stat., 58 [U. S. Comp. St., 1901, p. 2831], entitled "An act to remove certain burdens on the American merchant marine," etc., provides that the word "port," as used therein, shall be construed to mean either the port where the vessel is registered or enrolled, or the place in the same district where the vessel was built or where one or more of the owners reside.  Defendant, an Illinois corporation, having its principal office in Chicago, and offices also in Paducah and other cities, operated certain steamboats, which were registered at Paducah, each of which had painted on its stern, in compliance with the statutes of the United States, the words "of Paducah, Kentucky."  HELD, that Paducah was the home port of the vessels so registered and marked.

2. The home port of a vessel engaged in interstate commerce is its situs for taxation, though its owner resides in a different State.

3. A State is not a citizen within the meaning of the statute authorizing the removal of causes from the State to the federal court on the ground of diversity of citizenship.

4. Rev. St. U. S., section 4141 [U. S. Comp. St., 1901, p. 2808], provides that every vessel shall be registered by the collector of the district, which includes the port to which such vessel be-

longs at the time of registry, which shall be deemed to be that at or nearest to which the owner, or, if there be more than one, the husband or managing owner, usually resides. Sections 4178, 4334 [U. S. Comp St., 1901, pp. 2830, 2968], require the name of the port to which a licensed or registered vessel belongs to be painted on its stern, and provide a penalty if this is not done. Act Cong. June 26, 1884, c. 121, section 21, 23 Stat., 58 [U. S. Comp. St., 1901, p. 2831], provides that the word "port," as used in sections 4178 and 4334, in reference to painting the name and port of registered vessels on their sterns, shall be construed to mean either the port where the vessel is registered or the place in the same district where the vessel was built, or where one or more of the owners reside. HELD, that the meaning of the word "port" in section 4141 was likewise changed.

FRANK A. LUCAS, FOR COMMONWEALTH, APPELLANT.

1. Are boats taxable where they are registered or where the owner resides?

The appellee being a corporation, created under the laws of the State of Illinois, and having its chief office in the city of Chicago, must be deemed as a matter of law to have its domicile in that city and State.

This court has held that boats are subject to taxation at their "home port." Appellee, in its answer, admits that it has violated the laws of the United States by registering its vessels at another port, than that at which is located its chief office, and has painted upon the sterns of its boats the name of the port at which they are registered, viz., Paducah, Ky.; but contends that though it has held out Paducah to the world as the home port of these boats, it should now be permitted to take advantage of its own wrong and claim Chicago as their home port.

We claim that the port of registry should control.

2. Would the taxation of these boats by the Kentucky authorities constitute an interference with interstate commerce?

We contend that while these boats are engaged in interstate commerce, as nearly all boats are that run upon our rivers, they are merely instruments by which commerce is carried on. No State can levy any tonnage tax, or lay any tax on interstate commerce itself, but the principle has always been recognized that the instruments by which commerce is carried on, were subject to taxation as property, wherever they might be situated, provided, only that they were not discriminated against because of their occupation.

Commonwealth, ex rel. Lucas v. Ayer & Lord Tie Co.

Where it is demonstrated that the "home port" of the vessels is in Paducah, and that their actual situs for purposes of taxation is in that city, then they are taxable there as announced by this court in the city of Newport v. Berry, 14 R., 29.

## AUTHORITIES CITED.

1. Are boats taxable where they are registered, or where the owner resides? City of Newport v. Berry, 14 Ky. Law Rep., 29; Sec. 4141, Rév. Stats. of the U. S.; Sec. 4178, *Idem.;* Morgan v. Parham, 16 Wall., 471, (21 L. Ed., 303); Hays v. Steamship Co., 17 How., 596 (15 L. Ed., 254); Moran v. New Orleans, 112 U. S., 69 (28 L. Ed., 655); Transportation Co. v. Wheeling, 99 U. S., 273 (25 L. Ed., 412); Ferry Co. v. East St. Louis, 107 U. S., 365 (27 L. Ed., 419); Battle v. Mobile, 9 Ala. (N. S.), 234 (44 Am. Dec., 438); Irvin v. New Orleans, Chicago & St. Louis R. R. Co., 94 Ill., 105, (34 Am. Rep., 208); St. Louis v. Ferry Co., 11 Wall., 423 (20 L. Ed., 192); Burroughs on Taxation, sec. 46; People v. Pacific Mail Steamship Co., 58 N. Y., 242.

2. Would the taxation of these boats by the Kentucky authorities constitute an interference with interstate commerce? City of Newport v. Berry, 14 Ky. Law Rep., 29; Moran v. New Orleans, 112 U. S., 69 (28 L. Ed., 655); Lou. & Jeff. Ferry Co. v. Com., 22 Ky. Law Rep., 446; C. C. C. & St. L. Ry. Co. v. Backus, 154 U. S., 439 (38 L. Ed., 1041); Henderson Bridge Co. v. Com., 17 Ky. Law Rep., 389; Henderson Bridge Co. v. Kentucky, 166 U. S., 150 (41 L. Ed., 953); Morgan v. Parham, 16 Wall., 471 (21 L. Ed., 303).

CAMPBELL & CAMPBELL, FOR APPELLEE.

1. Much stress is made in appellant's argument on the fact that it is alleged and admitted that the boats were enrolled in Paducah, and the words "Paducah, Ky.," were painted on the stern of each vessel, and that these facts gave the property such a situs in Kentucky as made it liable to taxation in this State.

We maintain that such a position is untenable, and that the statute fixing the home port as the place where the owner resides, can not be so readily repealed or evaded.

We admit that tangible personal property capable of being and which is incorporated into the personal property of this

164        KENTUCKY REPORTS.        [Vol. 117

Commonwealth, ex rel. Lucas v. Ayer & Lord Tie Co.

State, can be subject to taxation in this State, although the owner may reside in another State, but we insist that vessels which are here only temporarily for the purposes of commerce, and which belong to a corporation whose domicile is in the State of Illinois, and which are not tangible property, can not be held to have such a situs in this State as to be subject to taxation.

The following authorities are referred to: The Schooner, Mary Chilton, 4 Fed. Rep., 847; Rev. Stat. U. S., secs. 4131, 4132, 4137, 4141, 4147, 4142, 4155, 4178, 4312, 4322, 4323; Pullman Palace Car Co. v. Pennsylvania, 141 U. S., 613; Wheeling, &c. Pkt. Co. v. City of Wheeling, 9 Otto, 273; Yost, Treasurer v. Lake Erie Trans. Co., 112 Fed. Rep., 746, 50 C. C. A. Rep., 511; St. Louis v. Ferry Co., 11 Wall., 423; Hays v. Pacific Mail Steamship Co., 17 Howard, 596; Morgan v. Parham, 16 Wall., 471; Myers Fed. Dec., vol. 23, Title, Lien. For Repairs and Supplies, and to following cases reported therein, viz.: The Albany, 4 Dillon, 439; The Lulu, 10 Wallace, 192. The St. Lawrence, 3 Ware, 211; The Plymouth Rock, 13 Blatchford, 505; City of Louisville v. Sherley, 80 Ky., 71; Com. v. Gaines, 80 Ky., 489; Thomas v. Mason Co. Ct., 4 Bush, 136; Boske, Sheriff v. Security T. & S. Vault Co. Admr., 22 Rep., 181; City of Covington v. Whayne, 22 Rep., 826; Newport v. Berry, 14 Rep., 29.

OPINION OF THE COURT BY JUDGE BARKER—REVERSING.

This is a proceeding instituted by the auditor's agent Frank A. Lucas, against appellee, under the provisions of section 4241, Ky. St., 1899, to enforce the listing for taxation of certain steamboats owned by it, engaged in interstate commerce on the Ohio, Cumberland, Tennessee, and Mississippi rivers. The appellee is a corporation organized under the laws of the State of Illinois, having its principal office in Chicago; it also has offices in Paducah and other cities along the rivers upon which it engages in navigation. The steamboats in question are the Russell Lord, Pavonia and Inverness. The years for which these vessels are sought to be listed for taxation are 1899, 1900, and 1901. They are registered in Paducah, Ky., and each of them has painted on its stern, in compliance with the

statutes of the United States, the words "of Paducah, Kentucky." To the petition appellee filed an answer, admitting that the vessels sought to be taxed are registered at Paducah, Ky., and that they have the words "of Paducah, Kentucky," painted on their sterns. Their values as alleged in the petition are denied, as is also the allegation that Paducah is their home port; and it is alleged affirmatively that appellee is an Illinois corporation, having its chief office and place of business in Chicago; that its vessels are engaged in interstate commerce upon the rivers before mentioned; that they are taxed in Chicago, the domicile of their owner, and are not taxable by the State of Kentucky, in Paducah or elsewhere. The answer concludes with the following allegation: "Defendant, further answering, says that H. Baker, upon whom notice in this case was served, was, during the said years, 1899, 1900, the general manager of the transportation department of said Ayer & Lord Tie Company, of its said steamboats, Russell Lord, Pavonia, and in 1901 of steamer and its barges Inverness, and for convenience sake, and under the act of Congress, said steamers were enrolled or registered at the port of Paducah, Ky., and said Baker being a resident of the State of Kentucky, and in which ports it is proper to register or enroll said boats." To this pleading a general demurrer was interposed by appellant, which was overruled, and, declining to plead further, its petition was dismissed, from which judgment this appeal is prayed.

The allegations of the petition, which are admitted by the answer, and the allegations of the answer, which are admitted to be true by the demurrer, aptly raise the question as to whether or not the steamboats of appellee are taxable by the Commonwealth of Kentucky. Ordinarily, the residence of the owner is the situs for taxation of personal property, but this rule is by no means without exceptions, and it often

happens that personal property obtains a situs for taxation in a jurisdiction foreign to the residence of its owner. Vessels engaged in navigation upon the high seas, and upon the great lakes, and rivers of the United States, are often separated by long distances from the residences of their owners. Such vessels, in so far as they are the property of citizens of the United States, are governed by its laws. It has been deemed wise by the general government, from the earliest period of its existence, that all vessels engaged in interstate or international commerce should have a home port, where they are registered and enrolled, enjoy certain privileges, and are subject to certain burdens and duties; and, that all who have business transactions with them may know beyond question their home port, it is required by statute that its name shall be painted in a certain way upon the stern of each vessel. By an act of Congress, which became a law December 31, 1792 (section 4141, Rev. St. U. S. (U. S. Comp. St., 1901, p. 2808), it is provided:

"Every vessel, except as is hereinafter provided, shall be registered by the collector of that collection-district, which includes the port to which such vessel shall belong at the time of her registry; which port shall be deemed to be that at or nearest to which the owner, if there be but one, or, if more than one, the husband or acting and managing owners of such vessel, usually resides."

Section 4178 (U. S. Comp. St., 1901, p. 2830) : "The name of every registered vessel, and of the port to which she shall belong, shall be 'painted on her stern, on a black ground, in white letters, of not less than three inches in length. If any vessel of the United States shall be found without having her name and the name of the port to which she belongs so painted, the owner or owners shall be liable to a penalty of fifty dollars. . . ."

Section 4334 (U. S. Comp. St., 1901, p. 2968) : "Every licensed vessel shall have her name, and the port to which she belongs, painted on her stern, in the manner prescribed for registered vessels; and if any licensed vessel be found without such painting, the owner thereof shall be liable to a penalty of twenty dollars."

It will be observed that by the foregoing statutes the home port of vessels belonging to citizens of the United States was the residence of the owner, if there was but one, or that of the residence of the vessel's husband, if there were more than one owner; and the name of this home port was to be painted on the stern of the vessel. Thus stood the law, regulating this subject, until the year 1884, when by an act of Congress, entitled "An act to remove certain burdens on the American merchant marine, and to encourage the American foreign carrying trade, and for other purposes," it was provided that "the word 'port,' as used in sections 4178 and 4334 of the Revised Statutes, in reference to painting the name and port of every registered or licensed vessel on the stern of said vessels, shall be construed to mean, either the port where the vessel is registered or enrolled, or the place in the same district where the vessel was built; or where one or more of the owners reside." Act June 26, 1884, c. 121, section 21, 23 Stat., 58 (U. S. Comp. St., 1901, p. 2831). This charged the requirement that the home port should be the residence of the owner, and granted the option of selecting one of three places as a home port, to wit, the port of registry, the place in the same district where the vessel was built, or where one or more of the owners reside.

In 1891 and 1897, section 4178 was amended so as to read as follows: "The name of every documented vessel of the United States shall be marked upon each bow and upon the stern, and the home port shall also be marked upon the stern.

Those names shall be painted or gilded, or consist of cut or carved or cast Roman letters, in light color on a dark ground, or in a dark color on a light ground, secured in place, and to be distinctly visible. The smallest letters used shall not be less in size than four inches. If any such vessel shall be found without those names being so marked the owner or owners shall be liable to a penalty of ten dollars for each name omitted. . . ." U. S. Comp. St., 1901, p. 2830.

Appellee had a right to cause its boats to be registered at Paducah, although that was not the place nearest to the port where it resided; and it fully complied with the law regulating the subject, by painting the words "of Paducah, Kentucky," on the stern thereof; and by the amendment of 1884, Paducah became the home port of the vessels so registered and marked.

The question, then, for adjudication, is whether or not the home port of a vessel is the situs for its taxation, although its owner may reside in a foreign country or State, as in the case under consideration. Judson in his work on Taxation, (section 186), says: "Steamboats and vessels navigating the public or navigable waters of the United States are taxable as property irrespective of the residence of the owner, in the home port of the vessels, which is said to be their situs for taxation." And in Cooley on Taxation (3d Ed.), vol. 1, p. 651: "Vessels are commonly taxable only at the port of registry, although the place of enrollment or registration does not necessarily fix the situs for taxation, which may be at the owner's domicile, or in a state where the owner does not reside, if the vessel's business is wholly in such State for an indefinite period." In the case of Hays v. Pacific Mail Steamship Company, 17 How., 596, 15 L. Ed., 254, the Supreme Court of the United States said: "The distinc-

Commonwealth, ex rel. Lucas v. Ayer & Lord Tie Co.

tion between a vessel in her home port and when lying at a foreign one, or in the port of another State, is familiar in the admiralty law. She is subjected in many cases to the application of a different set of principles. (Peyroux v. Howard) 7 Pet., 324 (8 L. Ed., 700); (The General Smith), 4 Wheat., 438, (4 L. Ed., 609.) We are satisfied that the State of California had no jurisdiction over these vessels for the purpose of taxation; they were not, properly, abiding within its limits, so as to become incorporated with the other personal property of the State; they were there but temporarily, engaged in lawful trade and commerce, with their situs at the home port where the vessels belonged, and where the owners were liable to be taxed for the capital invested, and where the taxes had been paid." In the cases of Moran v. New Orleans, 112 U. S., 653, 5 Sup. Ct., 40, 28 L. Ed., 653, it was said: "And it is undoubtedly true, as it has often been judicially declared, that vessels engaged in foreign or interstate commerce, and duly enrolled and licensed under the acts of Congress, may be taxed by State authority as property; provided the tax be not a tonnage duty, is levied only at the port of registry, and is valued as other property in the State, without unfavorable discrimination on account of its employment. Transportation Co. v. Wheeling, 99 U.S., 273 (25 L. Ed., 412); Morgan v. Parham, 16 Wall., 471, (21 L. Ed., 303); Hays v. Steamship Co., 17 How., 596; (15 L. Ed., 254); Ferry Co. v. East St. Louis, 107, U. S., 365 (2 Sup. Ct., 257, 27 L. Ed., 419)." See, also, Battle v. Mobile, 9 Ala., 234, 44 Am. Dec., 438; Irvin v. St. Louis & C. R. R. Co., 94 Ill., 105, 34 Am. Rep., 208; People v. Comr's, etc., 58 N. Y., 242; City of Newport v. Berry, 14 R., 29, 19 S. W., 238.

The steamboats involved in this litigation are separated

170 KENTUCKY REPORTS. [Vol. 117

Commonwealth, ex rel. Lucas v. Ayer & Lord Tie Co.

from the residence of their owner by a long distance; in fact, they can never visit the port at which their owner resides; they are, so far as their actual situs is concerned, permanently confined to the rivers over which they float. If their home port had to be Chicago, because that is the residence of their owner, as under the law prior to 1884, then they would have a home port from which they could derive no advantage or protection, because they could never reach it. It was to obviate this hardship, with others, that the act of 1884 was passed by Congress, permitting their owners to select for them a home port in the field of their operations, which is for them a home port in fact, as well as in law and name. Property, such as that under consideration, ought, logically, to be taxed at its home port; there it can be seen and properly valued for assessment by the fiscal officers; whereas, at the residence of its owner (Chicago), the officers, of necessity, must rely on the statements of the latter for both its existence and its value. At its home port it enjoys the protection of the laws of the jurisdiction in which it is located, and both justice and reason would seem to require that property thus permanently located, both in legal contemplation and in fact, within a jurisdiction foreign to that of its owner, should contribute its fair share to the support of that government whose protection it enjoys.

We conclude, therefore, that as Paducah, Ky., is the home port of the vessels in question, that place is their situs for taxation, and the demurrer to the answer should have been sustained.

There is no pretense in this case that appellee's property is sought to be taxed in a manner different from that in which all other property in Kentucky is taxed, or that there

is any unjust or invidious discrimination between it and property of the citizens of Kentucky.

There was a petition and bond tendered in the county court where this proceeding originated, and a motion to remove it to the federal court on the ground of diversity of citizenship between appellee and the Commonwealth of Kentucky. This motion was overruled, and correctly so. The Commonwealth of Kentucky is not a citizen within the meaning of the statute authorizing the removal of causes from the State to the federal court on the ground of diversity of citizenship. Chicago, St. Louis & New Orleans R. R. Co. v. Commonwealth, 24 R., 2124, 72 S. W., 1119.

For the reasons indicated, the judgment is reversed for proceedings consistent with this opinion.

Response to petition for rehearing by Judge Hobson.

Section 4141, Rev. Stat. U. S. (U. S. Comp. St., 1901, p. 2808), provides that the home port of vessels should be that at or nearest to, which the owner, if there be but one, usually resides. Sections 4178 and 4334 (U. S. Comp. St., 1901, pp. 2830, 2968), require that the name of this home port should be painted upon the stern of the vessels, with appropriate penalty for disobedience. Act June 26, 1884, c. 121, section 21, 23 Stat., 58 (U. S. Comp. St., 1901, p. 2831), prescribes that the word "port," as used in sections 4178 and 4334, in reference to painting the name and port of registered or licensed vessels on their sterns, should be construed to mean either the port where the vessel is registered or enrolled, the place in the same district where the vessel was built, or where one or more of the owners reside. The argument of counsel for appellee that the act of 1884, while changing the meaning of the word "port" in sections 4178 and 4334, left it unchanged as used in section 4141, amounts

to this: That the Congress of the Uuited States, after a policy continued throughout a century, requiring the name of the home port to be painted on the stern of vessels, suddenly changed that policy without any apparent reason, and permitted the name of a port which was not the home port to be painted thereon. We think that Congress required the name of the home port to be painted on the sterns of vessels for the wise and useful purpose of enabling all persons who had dealings with them to know where they belong, and we are not willing to lightly adopt a construction that it was intended by the act of 1884 to leave the place where the owner resides as the home port of the vessel, and yet permit the name of another port to be painted upon the stern. This construction would not only fail to enable persons dealing with vessels to know of certainty their home port, but it would absolutely mislead by permitting false information to be hung out under governmental sanction.

Petition for rehearing overruled.