*17 Chief Justice Roberts,
with whom Justice Thomas joins, concurring in part and concurring in the judgment.
I agree with the Court’s conclusion that the Valdez tax is unconstitutional “[bjecause the imposition of the tax depends on a factor related to tonnage and that tonnage-based tax is not for services provided to the vessel.” Ante, at 10. The plurality goes on, however, to reject the city’s argument that the tax may be sustained as a property tax similar to ones the city imposes on other property. The plurality rejects that argument on the ground that the city in fact does not impose similar taxes on other property. Ante, at 11-16. I would instead reject the argument on the ground that it does not matter.
The Tonnage Clause applies to “any Duty of Tonnage,” regardless of how that duty compares to other commercial taxes. U. S. Const., Art. I, § 10, cl. 3. The free flow of maritime commerce was so important to the Framers that they grouped the prohibition on tonnage duties with bans on keeping troops or ships of war, entering into compacts with other States or foreign powers, and engaging in war. Ibid. In light of the Framers’ goal to promote trade, and the language of the Clause, I do not see how an unconstitutional tax on maritime commerce becomes permissible when bundled with taxes on other activities or property. If States wish to use their geographical position to tax national maritime commerce, they must get Congress’s consent — just as they must to engage in the other activities prohibited by Clause 3.
The majority responds that nothing in the history of the Clause, its purpose, or this Court’s interpretation of it suggests that it bans all taxes on vessels using a port. Ante, at 9. The majority’s list of interpretive tools tellingly leaves out one — the words the Framers used. The Clause by its terms provides that “No State shall, without the Consent of Congress, lay any Duty of Tonnage.” U. S. Const., Art. I., §10, cl. 3 (emphasis added). The majority correctly con- *18 eludes that the Valdez tax is a tonnage duty, ante, at 10, and that should be the end of the matter.
The majority also objects that this approach would give vessels “preferential treatment,” when the Clause only protects vessels from discrimination. Ante, at 9. But the Clause says nothing about discrimination, and it should hardly come as a surprise that a constitutional ban on tonnage duties would give preferential treatment to vessels. Such protection reflects the high value the Framers placed on the free flow of maritime commerce. See State Tonnage Tax Cases, 12 Wall. 204, 214 (1871) (“Prior to the adoption of the Constitution the States ... levied duties on imports and exports and duties of tonnage, and it was the embarrassments growing out of such regulations and conflicting obligations which mainly led to the abandonment of the Confederation and to the more perfect union under the present Constitution”).
The plurality appears to be driven to its tax-comparison analysis only in responding to the city’s contention that the tax is exempt from the Tonnage Clause under the State Tonnage Tax Cases, supra, and Transportation Co. v. Wheeling, 99 U. S. 273 (1879). Neither of those cases has any bearing here. Both eases make clear that they apply only to taxation of property owned by citizens of the State. See State Tonnage Tax Cases, supra, at 213 (referring to “[t]axes levied by a State upon ships and vessels owned by the citizens of the State” (emphasis added)); Wheeling, supra, at 284 (“Property ... when belonging to a citizen of the State living within her territory ... is the subject of State taxation” (emphasis added)). We have never held that the Tonnage Clause allows such property taxes to be imposed on visiting ships. Doing so would allow easy evasion of the important principles of the Clause.
Both the plurality and Justice Stevens suggest that the evolution of the “home port doctrine” sheds light on how to *19 read the Tonnage Clause. See ante, at 15-16; post, at 22, n. 1 (dissenting opinion). I disagree. Under the home port doctrine, Polar Tankers “could not be taxed in [Valdez] at all,” even if the tax were not a tonnage duty. Japan Line, Ltd. v. County of Los Angeles, 441 U. S. 434, 442 (1979); Hays v. Pacific Mail S. S. Co., 17 How. 596, 599 (1855). In contrast, the Tonnage Clause forbids only tonnage duties, and would permit Valdez to impose other taxes on visiting ships — for example, “a reasonable charge for” the service of “policing of a harbor.” Clyde Mallory Lines v. Alabama ex rel. State Docks Comm’n, 296 U. S. 261, 267, 266 (1935). The demise of the home port doctrine is in no way inconsistent with reading the Tonnage Clause, as written, to ban all tonnage duties. See Japan Line, supra, at 439, n. 3 (rejecting home port doctrine while expressly not reaching Tonnage Clause argument).
In any case, because the Court has determined that Valdez’s tax is unlike other municipal taxes, it does not decide whether a tonnage duty would be unconstitutional when other similar property is taxed. See ante, at 16; post this page and 20 (Alito, J., concurring in part and concurring in judgment). Whatever other taxes the city might impose, this tax “operate[s] to impose a charge for the privilege of entering ... or lying in” the port of Valdez, and is a duty of tonnage for that reason. Clyde Mallory, supra, at 265-266. I therefore concur in the judgment.