## THE THOMAS MELVILLE.

### COUL v. LOUISIANA CONST. & IMP. CO.

*(Circuit Court of Appeals, Fifth Circuit. May 22, 1894.)*

#### No. 219.

**1. WHARVES—DUES—VESSELS "ARRIVING FROM SEA."**

Under the ordinance of the city of New Orleans of 1875, as amended in 1881, for collection of wharf dues, requiring ocean steamships "arriving from sea" and landing at any wharf in the city to pay a certain rate per ton for the first two months or less, and extra charges if remaining longer, such a vessel, so arriving and landing, and then departing for a coastwise port for part of her cargo, is liable for additional wharf dues on returning to New Orleans to finish loading and again departing, all within two months; the intention being apparent from other provisions of the ordinance that dues should be charged on each entry or trip of a vessel.

**2. SAME—TONNAGE.**

Such wharfage is to be computed on gross tonnage, as contemplated at the time of the ordinance and its amendments, not on the net tonnage basis subsequently adopted by act of congress (Act Aug. 5, 1882).

Appeal from the District Court of the United States for the Eastern District of Louisiana.

This was a libel by the Louisiana Construction & Improvement Company against the steamship Thomas Melville (J. Coul, claimant), for wharfage. The district court rendered a decree for libelant. Claimant appealed.

Henry P. Dart, for appellant.

J. R. Beckwith, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. The Louisiana Construction & Improvement Company, a corporation created under and by virtue of the laws of the state of Louisiana, is the contractor and lessee of the public wharves and landing places of the city of New Orleans, and, as such lessee, in consideration of maintaining the wharves and landings and making other outlays in relation thereto, is entitled, under its contract with the city of New Orleans, to collect wharf dues from vessels using the wharves at the rates established by the ordinance of the city of New Orleans adopted January 19, 1875, as amended May 12, 1875, and again amended May 27, 1881.

Among other rates, the said ordinance as amended provides as follows:

"Section 1. Upon all ships and other decked vessels and steamships arriving from sea and landing or mooring at any wharf in the city, the charges shall be as follows: On 1,000 tons and under, 20 cents per ton; excess over 1,000 tons, 15 cents per ton; steamships in Gulf of Mexico trade, 15 cents per ton.

"Sec. 2. The same payments on ships or sail vessels shall be exacted as on steamships; and an extra charge of one-third these rates shall be paid by all sail vessels or steamships which may remain in port over two months, the same to be recovered before departure, and, if they remain over four months,

an additional charge of one-third these rates per term of two months from arrival to departure.

"Sec. 3. The wharfage dues on all steamboats shall be fixed as follows: Not over 5 days, 10 cents per ton; each day after, $5 per day; boats arriving and departing more than once a week, 5 cents per ton each trip; boats laying up for repairs during the summer months to occupy such wharves as may not be required for shipping, for thirty days or under, $2 per day; all over thirty days, $1 per day.

"Sec. 4. On barges, steamboat hulls used as barges, flatboats, and other licensed vessels employed regularly in transportation of merchandise on the Mississippi river, the wharfage rates shall be the same as charged now for steamboats in the same business, viz.: If in port eight days, 10 cents per ton; after said eight days, $5 per day. Barges arriving and departing more than once a week shall pay only on each trip 5 cents per ton: provided, also, that this resolution shall not apply to barges, flatboats, and vessels that come to this port for a single trip, to be broken up or their use as carriers of merchandise to be discontinued at end of trip.

*   *   *   *   *   *   *   *   *   *

"Amended May 27, 1881, to take effect from and after May 29, 1881: Ocean steamships shall pay at the rate of 15 cents per ton for the first two months or less. Ocean vessels arriving in ballast shall not be charged wharfage during. that time they may be engaged in unloading, but which period shall not exceed five days from time of arrival: provided, said ballast be sold to the city or wharf lessees. Vessels arriving in ballast, and loading exclusively with grain, shall not pay more than five cents per ton for the first fifteen days, and one-third of one cent per day each additional lay day."

The present case is an appeal from a decree of the district court on a libel brought by the Louisiana Construction & Improvement Company, claiming wharf dues from the ocean steamship Thomas Melville, and presents two questions, both dependent upon the interpretation to be given to the city ordinance as above quoted: (1) Is an ocean steamship which arrives from sea, lands at a city wharf, and then departs for a coastwise port for part of cargo liable for additional wharf dues when she returns to New Orleans to finish loading, and again departs, all within two months? (2) Is the wharfage due from ocean steamships to be computed upon the basis of the gross tonnage, or upon the net tonnage?

The facts are not in dispute. The proof shows that the Thomas Melville was an ocean steamship, with gross tonnage of 1,706 tons, underdeck tonnage 1,573 tons, net tonnage 1,066 tons. She arrived in the port of New Orleans, and went to the wharf to unload a cargo of fruit and sulphur from the Mediterranean, on January 23, 1893, where she remained until February 1, 1893, when, having discharged her cargo, she cleared from New Orleans for Galveston, Tex. At Galveston she took on cargo, returning to the port of New Orleans on the 10th of February, 1893, landing at another wharf than that previously occupied, and there taking on cargo until March 8, 1893, when she cleared and sailed for a foreign port. She paid the wharfage dues on her departure for Galveston, but refused to pay the wharfage dues for the use of the wharf on the second entry, following her voyage from Galveston. The libelant demanded pay for this last use of the wharf, which the steamship refused, on the ground that, both voyages having terminated in 40 days from the date of her arrival from the Med-

iterranean, the ship was liable to only one charge for both voyages and both moorings at the wharf.

1. So far as the use of the wharves is concerned, the clearance and departure of the Thomas Melville for the port of Galveston, although to take on only a portion of her intended cargo, was the entrance upon a distinct voyage; and, on her return from Galveston to the port of New Orleans, she was again "a vessel arriving from sea," without any necessary connection with her former entry into the same port. The ordinance is framed with the apparent intention that, on each entry or trip of a boat or vessel, wharfage dues shall be charged and collected; for, in relation to those vessels which were expected to arrive and depart more than once a week, the ordinance was careful to provide for a reduced wharfage; for instance:

"Boats arriving and departing more than once a week, five cents per ton each week." "Barges arriving and departing more than once a week shall pay only on each trip 5 cents per ton." "Vessels arriving in ballast, and loading exclusively with grain, shall not pay more than five cents per ton for the first fifteen days, and one-third of one cent per day each additional lay day."

We think a fair interpretation of the ordinance is that a vessel arriving from sea shall pay wharfage dues for each entry, irrespective of the length of time she may occupy the wharves.

2. The word "ton," in the ordinance and amendments thereto controlling this case, as applied to the measurement of vessels, has a certain definite meaning, well settled by custom and by the navigation laws of the United States, and it means 100 cubic feet of interior space. The entire cubic contents of the interior space, numbered in tons, is called the "gross tonnage." When, from the entire cubic contents of the interior of a vessel, there are deducted the spaces occupied by the crew and by propelling machinery, the remainder, numbered in tons, is called the "net tonnage." When the ordinance and amendments thereto in question were adopted, the navigation and customs laws of the United States dealt only with gross tonnage; and, at the same time, canal tolls in the state of Louisiana and general charges for towage and dock services were based upon gross tonnage. There is every reason to conclude—in fact it is not seriously disputed—that, at the time of the ordinance and amendments referred to, gross tonnage was contemplated and intended as a basis upon which wharf dues were to be charged and collected. Since the adoption of the said ordinances, there has been no expression upon the part of the city of New Orleans that any other interpretation should be given to the said ordinances. The contract of 1891 between the Louisiana Construction & Improvement Company and the city of New Orleans contains no intimation or suggestion that any different interpretation is to be given to the ordinance which formed the basis of the contract. On the 5th of August, 1882, the United States, by an act entitled "An act to provide for deductions from the gross tonnage of vessels of the United States" (22 Stat. 300), departed from the practice of cal-

culating customs dues upon the gross tonnage of vessels, and adopted the practice of calculating customs and tonnage dues upon the net tonnage, which was to be determined according to certain rules laid down in the statute, and denominated the "net register tonnage;" the said law providing, however, that the register of the vessel must show the gross tonnage, all deductions made therefrom, and the resulting net or register tonnage. The said act also provides that all foreign vessels must be remeasured on entering any port of the United States, unless the secretary of the treasury should become satisfied that the nation to which the ship belongs has adopted our system of measurement. This change of practice by the United States in the collection of customs and tonnage dues is the main argument presented to this court to sustain the proposition that, in determining the amount of wharfage dues which the Louisiana Construction & Improvement Company is entitled to collect under its contract with the city of New Orleans, depends upon the net rather than upon the gross tonnage. We cannot see that the acts of congress passed in 1882, in which departure is made from a long-established practice, can affect the interpretation of an ordinance of the city of New Orleans adopted in 1881. If the ordinance in 1881 contemplated gross tonnage, an amendment adopted by the city council would be necessary to change it so as to eliminate gross tonnage, and substitute net tonnage. Our attention has been called to the case of the The Craigendoran, 31 Fed. 87, wherein Judge Benedict, construing an act of the legislature of the state of New York limiting wharf charges, which act provided a rate of wharfage to be demanded of vessels in proportion to their tons burden, held that the wharfage dues thereunder should be calculated upon the registered, and not the gross, tonnage. This case seems to have been well decided, but it is not applicable here, for the reason that, in the statute which the learned judge interpreted, the wharf dues collectible thereunder are dependent upon the burden or carrying capacity of the vessels using the wharves; and the case was decided in 1887, when the registered tonnage, the net tonnage, and the burden or carrying capacity of a vessel were substantially the same.

The decree appealed from seems to be correct, and it is affirmed.