## THE CESTRIAN.

(Circuit Court of Appeals, Fifth Circuit. February 24, 1917. Rehearing Denied· March 30, 1917.)

No. 2922.

1. COMMERCE ⬥�longs10—POWERS—EXACTION AND REGULATION OF WHARFAGE.

In the absence of inconsistent congressional legislation, it is competent for local authorities to impose reasonable charges·for the use by vessels of wharves and other facilities furnished and the mode of rating such charges, whether according to the size or capacity of the vessel or otherwise, is a matter for the determination of the local authorities. It is not a valid ground of objection to such charges that they are computed on the vessel's gross tonnage, and not upon its net tonnage, which is made the basis of the United States tonnage duties.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 8.]

2. MUNICIPAL CORPORATIONS ⬥�longs719(3)—IMPOSITION OF WHARFAGE CHARGES —COMPUTATION OF TONNAGE.

That the customs officials of the United States, in ascertaining the net tonnage of a vessel for the computation of tonnage duties, under Comp. St. 1913, § 7730, subd. "h," excluded from the gross tonnage the shelter deck, which was not so inclosed as to make it available for the carriage of all kinds of cargo requiring protection from the weather, did not constitute a ruling binding upon the board of port commissioners of New Orleans, nor preclude them from including such space in computing·the gross tonnage of the vessel for the purpose of imposing wharfage charges under Act La. No. 36 of 1900, when such space was available and was in fact used for the stowage of cotton on the outbound voyage.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1531.]

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in admiralty by the Board of Commissioners of the Port of New Orleans against Frederick Leyland & Co., Limited, claimant of the steamship Cestrian, and others. Decree for respondents, and libelant appeals. Reversed.

James Wilkinson, of New Orleans, La., for appellant.

Henry P. Dart, Jr., of New Orleans, La. (Dart, Kernan & Dart, of New Orleans, La., on the brief), for appellees.

Before WALKER, Circuit Judge, and GRUBB, District Judge.

WALKER, Circuit Judge. On September 28, 1910, the board of commissioners of the port of New Orleans, a body organized under an act of the Legislature of Louisiana, filed its libel against the steam ship Cestrian, claiming $1,089.47 as due for harbor fees, wharfage, and shed charges against that ship, based, as provided in the act mentioned, upon what the libelant claimed was the vessel's gross tonnage. Acts of Louisiana 1900, p. 44, Act 36. The claimant tendered $941.42, asserting that only that amount was due, which tender was refused. The contention of the claimant was sustained by the decree appealed from.

The controversy between the parties turns upon the question whether what is known as the shelter deck space of the vessel is or is not to be computed in determining the vessel's gross tonnage. The amount of gross tonnage, upon the basis of which the sum claimed was assessed, was that shown by a measurement made by the United States customs authorities to ascertain the net tonnage of the vessel subject to the United States tonnage tax (U. S. Comp. St. 1913, § 7727 et seq.), which measurement for several years prior to 1910 was followed by those authorities and also by the libelant, and, as to gross tonnage, corresponded with the amount of such tonnage of the vessel shown in a statement of it made to the libelant by the vessel's agents. In 1910, and prior to the filing of the libel, the customs officials made another measurement of the vessel, a result of which was to show that the vessel's gross tonnage was less than that shown by the former measurement, which the libelant continued to follow. The evidence makes it sufficiently plain that the difference in the matter of the vessel's gross tonnage between the earlier and the later measurements made by the customs officials is due to the fact that in the former the vessel's shelter deck space was included in the computation, while in the latter that space was excluded. If the later conclusion of the customs authorities that the shelter deck space should be excluded in computing the vessel's gross tonnage was not binding on the libelant (the appellant here), the sufficiency of the data upon which its assessment of the amount claimed in the libel was based is not fairly open to question.

[1] It is not here open to question, and it is not questioned, that, in the absence of inconsistent congressional action on the subject, it is competent for the local authorities to impose reasonable charges for the use by vessels of wharves and other facilities furnished. Transportation Co. v. Parkersburg, 107 U. S. 691, 699, 2 Sup. Ct. 732, 27 L. Ed. 584. And, as is clearly intimated by what is said in the opinion in the case just cited, the mode of rating such charges made, whether according to the size or capacity of the vessel, or otherwise, is a matter for the determination of the local authorities. It is not a valid ground of objection to such charges that they are to be computed with reference to the vessel's gross tonnage, and not upon its net tonnage, which is made the subject of the United States tonnage duties. The Thomas Melville, 62 Fed. 749, 10 C. C. A. 619; 3 U. S. Comp. Stat. 1913, §§ 7727 et seq., and 7811 et seq.

[2] The provision of the act of Congress for ascertaining a vessel's net tonnage by making specified deductions from its gross tonnage, the method of ascertaining which is prescribed, contains the following:

"If there be a break, a poop, or any other permanent closed-in space on the upper deck available for cargo or stores, or for the berthing or accommodation of passengers or crew, the tonnage of that space shall be ascertained and added to the gross tonnage: Provided, that nothing shall be added to the gross tonnage for any sheltered space above the upper deck which is under cover and open to the weather; that is, not inclosed." 3 U. S. Comp. Stat. 1913, § 7730, subd. "h," p. 3445.

The shelter deck of the steamship Cestrian is the space above the upper deck which is permanently inclosed by a steel structure and

not open to the weather, except that there are several openings extending from one side of the vessel to the other, for which openings iron doors or coverings are provided, and when these openings are closed with the means provided for this purpose, the entire space is protected from the weather, except that the closing of the doors or openings does not make the inclosure as a whole air and water tight. But the evidence satisfactorily shows that by the use of tarpaulins and other means available practically the entire space within the shelter deck could be used for storing cargo, and was habitually used for that purpose on the vessel's voyages out of New Orleans; it generally leaving that port with a full cargo of cotton stored on the shelter deck, in which 4,500 or 5,000 bales can be carried. The evidence fails satisfactorily to show what the situation as to the use or nonuse for cargo of the shelter deck at the time and place of the making of the examination of the vessel by the customs officials, which was the basis of their conclusion that the space embraced within the shelter deck was to be excluded in ascertaining the vessel's gross tonnage. The libelant was not represented in those proceedings and had no notice of them. But it is made to appear that in the examinations made by the customs authorities to determine the space in a vessel available for cargo attention is principally, if not exclusively, directed to the question of availability for import or inbound cargo; this being a result of the consideration that a principal purpose of their examination is to arrive at a basis for the assessment of the United States tonnage duty imposed at each entry of a vessel. 3 U. S. Comp. St. 1913, § 7811 et seq.

It seems that there is no necessary inconsistency between a finding by the customs officials that a given space in a vessel is unavailable for cargo which it could bring into the port at which the tonnage duty is payable, and a finding that the same space is available, and in fact is habitually availed of, for the storage of outward-bound cargo from the same or another port. It is further made to appear that there is a lack of uniformity in the rulings of the customs officials on the question of including or excluding the space within such a shelter deck as that of the Cestrian in computing a vessel's gross tonnage, the conclusion in a given case depending upon whether the space is or is not found to be so covered and inclosed that cargo needing protection from the weather may be, and in fact is, stored and carried there with reasonable safety. It seems obvious that the space above the upper deck of a vessel which is so covered and inclosed during a voyage as to be available, and habitually availed of, for the storage of export or outbound cargo needing protection from the weather, cannot properly be excluded in computing its gross tonnage for the purpose of ascertaining the basis upon which the vessel is subjected to the payment of charges, measured by the vessel's carrying capacity, for the use by it of public utilities of the port at which the cargo is taken on; that use being incident, not merely to the vessel's entry at the port, but also to its stay there while taking on, as well as while unloading, cargo.

The Louisiana statute above referred to imposes the charges for a vessel's use of the public wharves, etc., of the port of New Orleans,

and provides for the rating or measurement of the compensation to be paid by the vessel's gross tonnage or total actual carrying capacity. Nothing in that statute indicates that the officials intrusted with the duty of assessing and collecting those charges were to be bound by any ruling of the United States customs authorities on the question of what is included in the vessel's gross tonnage. It is made to appear by the evidence that such rulings of the United States customs officials as the one relied upon by the claimant in this case probably are attributable, in part at least, to their failure to take into consideration facts certainly pertinent for consideration in computing a vessel's total actual carrying capacity to ascertain the basis for measuring the compensation chargeable against the vessel for its use of public wharves, etc., while in port. In view of this fact, we think the libelant was well warranted in refusing to follow a ruling of the customs officials, the effect of which was to deduct from the vessel's gross tonnage, previously ascertained and acted on for years by the officials making the ruling, that of a sheltered space above the upper deck so inclosed during a voyage as to be suitable for the storage of cargo needing protection from the weather, and which in fact is habitually so used on voyages out of New Orleans. The Thomas Melville, supra. A result of the appellant's changing its practice in the matter to make it conform to the changed attitude of the customs officials would be to enable the vessel to escape the payment of part of the compensation chargeable against it for a use made by it of public utilities furnished at the port of New Orleans.

The decree of the District Court is reversed, and a decree will be here entered in favor of the appellant for the amount claimed in the libel, interest thereon, and the costs of the suit.