WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET
STEAMSHIP AUTHORITY *vs.* BENJAMIN D. BAXTER.

Barnstable.   March 4, 1965. — June 8, 1965.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Ship. Carrier,* By ship. *Woods Hole, Martha's Vineyard and Nantucket Steamship Authority. Federal Law. Words,* "Gross tons."

The owner of a vessel, who purchased and took title to goods on the mainland of the Commonwealth, transported them in the vessel to the island of Nantucket, and there resold them for their cost to him plus a transportation charge, and who otherwise was not a dealer in goods but had his entire investment in transportation facilities and designated himself in telephone book listings and on his stationery as being in the business of water transportation, was engaged in "the carriage of . . . freight for hire by water" between the mainland and Nantucket within § 5 of St. 1960, c. 701, establishing the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.   [290]

In enacting St. 1960, c. 701, establishing the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, the Legislature intended that the "gross tons" of a vessel mentioned in the last paragraph of § 5 should be calculated according to the Federal method, and that the matter of the gross tonnage of the vessel should be conclusively determined by the gross tonnage shown on its Federal Customs House certificate.   [290–291]

BILL IN EQUITY filed in the Superior Court on July 25, 1963.

The suit was reported by *Good,* J.

*Laurence S. Fordham* for the plaintiff.

*George C. O'Brien (John J. Grady* with him) for the defendant.

SPALDING, J.   Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (Authority) brought this suit to enjoin Benjamin D. Baxter (Baxter) from operating the vessel "Governor Brann" between the mainland of the Commonwealth and the islands of Martha's Vineyard and Nantucket allegedly in violation of St. 1960, c. 701, § 5. The Authority also sought an accounting for profits de-

349 Mass. 288                                              289

Woods Hole, Martha's Vineyard & Nantucket S.S. Authy. v. Baxter.

rived from the operation of the vessel in transporting freight for hire.

Section 5 provides in relevant part: "Except as provided in this act no person shall operate a vessel of more than one hundred gross tons for the carriage of passengers, vehicles or freight for hire by water between the mainland of the commonwealth and the island of Martha's Vineyard or the island of Nantucket or between said islands unless licensed or permitted in writing so to do by the Authority."

The case was referred to a master who, in his first report, found that the vessel had a tonnage of 111.62 gross tons. He further found that Baxter "resorted to the subterfuge of purchasing products of various kinds, but for the most part road building materials such as stone, gravel and road oil, on the mainland, taking title to them and then reselling them upon landing them on Nantucket." When goods were delivered at Nantucket one price was set, calculated on the basis of the cost of the goods to Baxter plus a charge for transportation. On one occasion, Baxter transported a shelter and other materials, first taking a bill of sale in the amount of $1. He "resold" the shelter and materials at Nantucket to the same person for the sum of $100. Baxter maintains no inventory of stone, gravel, cement or other commodities, has no sales office, employs no salesmen and does not advertise himself as a seller. His entire investment is in transportation facilities. Baxter lists himself in the telephone book under steamship companies and his "regular listing shows him to be engaged in 'boat transportation.' " His business stationery is imprinted with the name "Baxter Water Transport, Inc."

Baxter has no license or other arrangement with the Authority whereby he is authorized to operate a vessel of more than 100 gross tons for the carriage of freight for hire. The master further found that between October 1, 1962, and July 24, 1963, Baxter's transportation for hire resulted in damage to the Authority in the amount of $6,512.90.

Following the filing of the first report, Baxter moved to recommit it to the master to receive additional evi-

dence. He averred that since the original hearing structural changes had been made in the vessel, as a result of which the United States Bureau of Customs made a new admeasurement of the vessel and certified that it was less than 100 gross tons. The judge granted the motion.

The master's second report contained the following additional findings: The precise change made by Baxter in the "Governor Brann" was to put a series of "raised floors" in two transverse sections of the vessel. "By raising the floors in this way . . . Baxter has succeeded in reducing the depth factor in these sections from 6.50 feet to 1.95 feet, and correspondingly, reducing the gross tonnage appearing on the federal certificate from 111.62 to 91.77 gross tons." A new certificate was issued by the Bureau of Customs showing the tonnage to be 91.77 gross tons. The sole purpose of these changes was to avoid the tonnage limitation in § 5.

The judge reported the case, without decision, "upon the pleadings, orders and [m]aster's [r]eports" for a determination of the following issues, which, the parties agree, are dispositive of the case: (1) whether the defendant's operations have been "for hire" within the meaning of § 5, and (2) whether the gross tonnage of the defendant's vessel as determined by the Bureau of Customs concludes the issue of size, under § 5, or whether the court should make an independent determination of gross tonnage on the basis of all the evidence.

1. We are of opinion that the findings of the master amply establish that Baxter was engaged in the carriage of freight for hire. A contrary conclusion would permit the evasion of § 5 by subterfuge, thereby making the protection intended by that section illusory. Since Baxter's activities were "for hire," we must determine the tonnage question.

2. Gross tonnage, according to the master, is one of several methods for determining vessel size; a gross ton is a unit of volume, each ton being 100 cubic feet. See *The Thomas Melville,* 62 Fed. 749 (5th Cir.); *Transportation Co.* v. *Wheeling,* 99 U. S. 273, 284. It is to this unit of

measurement that § 5 refers. The statute, however, is silent on the method by which such tons are to be calculated.

The issue is solely one of statutory construction. In deciding this issue, we are not bound by Federal law. See *The Cestrian,* 240 Fed. 929 (5th Cir.), cert. den. sub nom. *Frederick Leyland & Co. (Ltd.)* v. *Commissioners of the Port of New Orleans,* 245 U. S. 647. We are, however, of opinion that the Legislature by the phrase "gross tons" in § 5 intended to adopt, as our law, the Federal method of calculation and to make conclusive the tonnage figures on the Federal certificate. See G. L. c. 103, §§ 26, 28, 31, relating to piloting, where the phrases "tons register" and "net registered tonnage" necessarily refer to Federal standards.

Such an interpretation makes available a procedure whereby the tonnage of a vessel can be readily ascertained with certainty before shipping operations are commenced. All interested parties have notice of the tonnage through the Federal register system. In this way, the matter is not left to "private calculation and open to dispute." *The Craigendoran,* 31 Fed. 87, 88 (E. D. N. Y.) The rights of the parties should not depend upon an ad hoc determination based upon expert testimony as to what would be a fair and accurate tonnage figure.

The Authority contends that the Federal standard should not be used because the sizes of many vessels are not accurately reflected through the use of "various gimmicks, artifices and subterfuges." If other standards are to be adopted we think that it can be done more appropriately by the Legislature. We are in no position to say, as the Authority urges, that a technique, known as the "Builder's Old Measurement Rule," would more closely conform to the legislative purpose of § 5. In the absence of a more precise definition by the Legislature both certainty and convenience favor our construction.

A decree may be entered in accordance with this opinion.

*So ordered.*