CITY OF VALDEZ, Appellant
and Cross–Appellee,

v.

POLAR TANKERS, INC., Appellee
and Cross–Appellant.

Nos. S–12218, S–12223.

Supreme Court of Alaska.

April 25, 2008.

Debra J. Fitzgerald and William M. Walker, Walker & Levesque, LLC, Anchorage, for Appellant and Cross–Appellee.

Leon T. Vance, Faulkner Banfield, P.C., Juneau, and Susan Orlansky and Eric T. Sanders, Feldman Orlansky & Sanders, Anchorage, for Appellee and Cross–Appellant.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

The City of Valdez adopted an ad valorem property tax on large vessels docking at private facilities in Valdez, and the city council thereafter adopted an apportionment formula based on days spent in port for taxing large vessels engaged in interstate commerce. Several transporters of oil, including Polar Tankers, Inc., challenged the tax in superior court, alleging that it violated the Due Process, Commerce, and Tonnage Clauses of the Federal Constitution. We hold that the apportionment formula does not create a risk of duplicative taxation; it was therefore error to declare the ordinance unconstitutional as applied.

## II. FACTS AND PROCEEDINGS

### A. Factual History

In 1999 the City of Valdez adopted Ordinance No. 99–17, an ad valorem property tax ("vessel tax") on certain large vessels docking at private facilities in the city. Part A of the ordinance describes the affected vessels:

> Boats and vessels of at least 95 feet in length for which certificates of documentation have been issued under the laws of the United States are subject to taxation at their full and true value unless the vessel is used primarily in some aspect of commercial fishing or docks exclusively at the Valdez Container Terminal where it is subject to municipal dockage charges.[1]

The city subsequently interpreted the exception for vessels docking exclusively at the Valdez Container Terminal to also apply to vessels docking exclusively at other city-owned docks. Part B of the ordinance provides for taxation on an "apportionment basis" and for adoption of assessment formulas:

> Vessels operated in intrastate, interstate or foreign commerce that have acquired a

taxable situs elsewhere, shall be assessed on an apportionment basis. The assessor shall allocate to the City the portion of the total market value of the property that fairly reflects its use in the City. The assessor shall establish formulas for calculating the proportion of the total market value allocated to the City. The assessment formula shall be approved by the city council.[2]

The vessel tax was proposed to address what was described as a serious erosion of the city's tax base, much of which is oil- and gas-related property. For several years before passage of the ordinance, the portion of the city's tax base consisting of oil and gas property had been declining rapidly, and it would continue to decline under a depreciation formula negotiated between the State of Alaska and the owners of the Trans Alaska Pipeline System (TAPS).

In accordance with Part B of the 1999 vessel tax ordinance, in 2000 the city council adopted a resolution containing an apportionment formula. Section 1 of Resolution No. 00–15 adopted a tax apportioned on the days spent in port:

> A vessel owner will pay the personal property tax based on 100 percent of the assessed value, times a ratio determined by the number of days spent in Valdez divided by the total number of days spent in all ports, including Valdez, where the vessel has acquired a situs for taxation.[3]

We refer to this as a "port-day" apportionment formula. The formula also exempts "periods when a vessel is tied up because of strikes or withheld from the Alaska service for repairs."[4] Section 2 of the 2000 resolution contingently provides for adoption of "another apportionment formula that will more fairly represent how value should be apportioned."[5] It provides:

> If a taxpayer claims that in a particular case the apportionment formula approved

**1.** Valdez Ordinance 99–17 (codified as Valdez Municipal Code (VMC) 03.12.020(A) (1999)).

**2.** *Id.*

**3.** Valdez, Alaska, Resolution No. 00–15 (May 1, 2001).

**4.** *Id.*

**5.** *Id.*

in this Resolution does not reasonably represent the portion of the total value of the vessel that should be apportioned to the taxing situs of Valdez, the taxpayer may petition, or the assessor may require, the use of another apportionment formula that will more fairly represent how the value should be apportioned among Valdez and other taxing jurisdictions.[6]

Polar Tankers, Inc. operates tanker vessels that transport crude oil from the TAPS terminal in Valdez to ports in Washington, California, and Hawaii. In Valdez, Polar loads crude oil at the Alyeska Marine Terminal, a private dock owned by a consortium of oil companies—the TAPS owners. Polar is a wholly owned subsidiary of ConocoPhillips Company. The city issued tax statements for each of the assessed vessels in early July of 2000, 2001, 2002, 2003, and 2004. Polar paid the assessed taxes under protest each year. The taxes it paid each year were: $440,221.24 in 2000; $398,157.62 in 2001; $1,037,530.12 in 2002; $1,433,072.20 in 2003; and $1,657,249.02 in 2004.

### B. Procedural History

After the city enacted the apportionment resolution in 2000, Polar sued the city in superior court, claiming the vessel tax violated the Due Process, Commerce, and Tonnage Clauses of the Federal Constitution. Polar was initially joined by several other tankship companies. Over the next three years, the city settled with all of the plaintiffs except Polar and SeaRiver Maritime, Inc. In 2004 the superior court granted these plaintiffs' motion for summary judgment, holding that the vessel tax was an unconstitutional duty on tonnage. The city moved for reconsideration. The superior court granted the reconsideration motion, vacated its earlier ruling, and directed the parties to brief seven legal and factual questions. In January 2005 the superior court issued a decision and order ruling that the apportionment method violated the Due Process and Commerce Clauses. It declined to rule on the Tonnage Clause issue. The city moved for summary judgment on that issue, and the superior court

granted the city's motion in July and concluded that, assuming the vessel tax was fairly apportioned, the tax would not violate the Tonnage Clause.

In January 2006 the superior court issued its final judgment holding that the tax did not violate the Tonnage Clause, but that the port-day apportionment formula, as applied to the plaintiffs, violated the Due Process and Commerce Clauses. The judgment permitted the city to levy the vessel tax as soon as it adopted a constitutional apportionment formula, and required the city to repay all taxes overpaid by the plaintiffs, as calculated using the new apportionment formula. The city moved for clarification of the final judgment. The court denied the clarification motion but stayed the judgment and ordered that the city could not "levy against Plaintiffs any amount of tax beyond the amount that would be due using this apportionment formula: Days in Valdez/365." The court ordered that the amount be paid into a court-supervised account until the appeal was terminated by agreement of the parties or decision of this court. Finally, the superior court denied all parties' motions for attorney's fees.

Three parties appealed. SeaRiver eventually dismissed its appeal, and the city's and Polar's appeals were consolidated. On appeal, the city challenges the Due Process and Commerce Clause rulings and Polar challenges the Tonnage Clause ruling.

## III. DISCUSSION

### A. Standard of Review

■ We review summary judgment rulings on constitutional issues such as the Due Process, Commerce, and Tonnage Clauses de novo.[7]

### B. The Vessel Tax Apportionment Formula Does Not Violate the Due Process Clause or the Commerce Clause.

Polar contends that the vessel tax violates the Due Process and Commerce Clauses of

---

6. *Id.*

7. *Lewis v. State, Dep't of Corr.,* 139 P.3d 1266, 1268–69 (Alaska 2006).

the Federal Constitution.[8] The superior court held that the tax, Valdez Ordinance 99–17, was constitutional, but that the port-day apportionment formula contained in Valdez Resolution 00–15 violated the Due Process and Commerce Clauses.[9]

Due process requires that: (1) the property taxed have a physical presence and minimal connections with the taxing sovereign (thus giving it a tax situs)[10]; and (2) the tax be fairly apportioned to "opportunities, benefits, or protection conferred or afforded by the taxing [authority]."[11]

In *Complete Auto Transit, Inc. v. Brady* the United States Supreme Court laid out the test for determining whether a tax on mobile property used in interstate commerce satisfies the Commerce Clause.[12] The *Complete Auto* test requires that: (1) the property taxed have a "substantial nexus" with the taxing jurisdiction; (2) the tax be fairly apportioned; (3) the tax not discriminate against interstate commerce; and (4) the tax be fairly related to the services provided by the jurisdiction.[13]

The Supreme Court has noted that the "*Complete Auto* test, while responsive to Commerce Clause dictates, encompasses as well ... due process requirement[s]."[14] We therefore consider minimal connection/substantial nexus and fair apportionment under both clauses simultaneously.

1.  **There is a substantial nexus between Valdez and the vessels, such that Valdez has become a tax situs.**

The parties agree that Polar's presence and activities in Valdez are sufficient to permit the city to tax its vessels, and that Valdez is therefore a tax situs for Polar. Ample evidence supports this conclusion. There is a direct and significant economic connection between the city and Polar. Most of Polar's business involves the oil it loads at the Alyeska Marine Terminal in Valdez, and the parties seem to agree that Polar's tankers spend an average of about forty-two port days in Valdez per year. Furthermore, the city provides many services to Polar. The city assists the Coast Guard in regulating traffic on dedicated "tanker lanes." The significant presence of the Coast Guard in the city is primarily due to the operations of Polar and the other oil shippers. The city tells us the Alyeska Marine Terminal, which is privately owned by the TAPS owners, was "financed by $1.3 billion in tax-exempt revenue bonds issued by the City." Polar has at least one employee permanently located in Valdez, and Polar's employees, including the vessel crews, have access to all the services provided by the city, such as police protection, airport, roads, and hospitals. The city is involved in oil spill contingency plans. As demonstrated by the EXXON VALDEZ oil spill in 1989, the city is heavily affected by oil spills; following the EXXON VALDEZ spill, cleanup efforts continued to consume city resources for more than three years. All of these factors create a substantial nexus between the city and Polar such that Valdez has acquired the status of a tax situs for purposes of the Due Process and Commerce Clauses.

Because we agree with the parties that a substantial nexus exists, we also agree that

---

8.  U.S. CONST. amend. XIV § 1; U.S. CONST. art. I, § 8, cl. 3.

9.  In its final judgment, the superior court stated that the port-day apportionment formula is contained in Valdez Resolution 00–19. This appears to be a typographical error as the port-day apportionment formula is contained in Valdez Resolution 00–15. We therefore refer to Valdez Resolution 00–15 here.

10. *Atlantic Richfield Co. v. State*, 705 P.2d 418, 430 (Alaska 1985).

11. *Ott v. Mississippi Valley Barge Line Co.*, 336 U.S. 169, 174, 69 S.Ct. 432, 93 L.Ed. 585 (1949) (holding that ad valorem property tax apportioned using miles traveled in state divided by total miles traveled did not violate Commerce or Due Process Clauses).

12. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977) (upholding sales tax challenged by motor carrier transporting cars into Mississippi from out of state).

13. *Id.* at 279, 97 S.Ct. 1076.

14. *Quill Corp. v. North Dakota*, 504 U.S. 298, 313 n. 7, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992).

Valdez is a tax situs for Polar.[15]

## 2. The vessel tax is fairly apportioned.

■ The superior court concluded that the city's port-day apportionment formula by which the tax is calculated violates the Due Process and Commerce Clauses because the formula creates a risk of multiple taxation and is therefore not fairly apportioned. We disagree.

■ The "central purpose behind the apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction."[16] There is no single correct method of apportionment; rather, a tax is deemed fairly apportioned if it is both internally and externally consistent.[17] Because both parties agree that the vessel tax is internally consistent (i.e., if all taxing jurisdictions used the same formula, a vessel would be taxed for one hundred percent of its value), we address only external consistency.

■ External consistency is the principle that looks "to the economic justification for the state's claim upon the value taxed, to discover whether a state's tax reaches beyond that portion of value that is fairly attributable to activity within the taxing state."[18] According to Hellerstein & Hellerstein, "the external consistency test in substance is nothing more than another label for the fair apportionment requirement."[19]

■ The superior court concluded that the vessel tax was not fairly apportioned because the apportionment formula created a risk of duplicative taxation. A tax may be invalid even if it creates only a risk of duplicative taxation. In *Central Railroad of Pennsylvania v. Commonwealth of Pennsylvania*, the Supreme Court stated that a "domiciliary State is precluded from imposing an ad valorem tax on any property to the extent that it *could be* taxed by another State, not merely on such property as is subjected to tax elsewhere."[20] We have similarly stated that "the Commerce Clause is triggered only upon an affirmative showing that property taxed by one jurisdiction has another taxable situs and *could be taxed elsewhere*."[21]

Polar admits that Valdez is a proper taxing situs. But Polar nonetheless argues that Valdez's taxing authority is subordinate to the taxing authority of Polar's domicile and that Valdez's apportionment scheme is unfair because it impinges on the domicile's taxing authority, creating the risk of multiple taxation. Polar asserts that California is its commercial domicile.

Under the home port doctrine, a vessel was subject to property taxation in full at the domicile of the owner and not elsewhere.[22] But the Supreme Court in *Japan Line, Ltd. v. County of Los Angeles* recognized that the home port doctrine has yielded to a rule of fair apportionment among situs states.[23] The Court there noted that if the containers at issue in *Japan Line* were instrumentalities

---

**15.** *See Goldberg v. Sweet*, 488 U.S. 252, 260, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989) (upholding excise tax under *Complete Auto* test and stating that because "all parties agree that Illinois has a substantial nexus with the interstate telecommunications reached by the Tax Act, we begin our inquiry with apportionment, the second prong of the *Complete Auto* test").

**16.** *Id.* at 260–61, 109 S.Ct. 582.

**17.** *Id.* at 261, 109 S.Ct. 582.

**18.** I JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶ 4.15[2], at 4–142 (3d ed.1998) (citing *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 185, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995)).

**19.** *Id.*

**20.** *Cent. R.R. of Pa. v. Pennsylvania*, 370 U.S. 607, 614, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962) (emphasis added).

**21.** *Kenai Peninsula Borough v. Arndt*, 958 P.2d 1101, 1103 (Alaska 1998) (emphasis added) (holding that Commerce Clause was not violated because vessel's tax status became fixed for full tax year on date of its assessment and it therefore could not be taxed elsewhere, even after being sold).

**22.** *S. Pac. Co. v. Kentucky*, 222 U.S. 63, 68–69, 32 S.Ct. 13, 56 L.Ed. 96 (1911); *see also* HELLERSTEIN & HELLERSTEIN, *supra* note 18, at ¶ 4.12[2][c].

**23.** *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 442, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979).

of purely interstate commerce, a rule of fair apportionment would have been applied.[24]

Therefore, a rule of fair apportionment must be applied to the taxation of Polar's ships. As we discuss below, an apportionment formula is fair if it apportions the full value of a ship between the taxing jurisdictions in which it is regularly present in proportion to the number of days during the tax year that the ship is present in each jurisdiction. Our determination that Valdez has adopted one of the many potential fair apportionment schemes it could choose from renders Polar's assertion of home port superiority irrelevant.[25]

Valdez's apportionment formula apportions the full value of a ship between the taxing jurisdictions in which it is regularly present in proportion to the number of days during the tax year that the ship is present in each jurisdiction. Thus if we assume that a tanker is in port in Valdez for fifty days a year and in port in all jurisdictions including Valdez for 150 days per year, the Valdez apportionment ratio would be 50/150. There is no

reason why the days at sea outside the jurisdiction of any taxing authority should be included in the denominator of the fraction. This result is different, however, from Polar's contention that any jurisdiction is taxing for days spent at sea.[26]

The port-day formula resembles the formula that was involved in *Braniff Airways v. Nebraska State Board of Equalization & Assessment*, and whose reasonableness was not challenged.[27] The *Braniff* formula involved the ratio of aircraft landings in the taxing jurisdiction as compared to all landings in all potential taxing jurisdictions.[28] There is not too much difference between landings and dockings, nor between dockings and days in port. Each of these measures assesses the extent of activity in the taxing jurisdiction relative to the activity in all taxing jurisdictions. This satisfies the goal of apportionment, which is "to ensure that each State taxes only its fair share of an interstate transaction." [29] Most importantly the *Braniff* formula taxed the whole aircraft in accordance with the ratio indicated by the formula without carving out some separate quantum

---

**24.** *Id.* at 445–46, 99 S.Ct. 1813. Although it appears that some of Polar's vessels, for some of the years at issue, might have acquired a taxing situs in a foreign nation, Polar does not argue that the international aspect of its commerce affects the Valdez tax. We recognize that *Japan Line* imposes an additional test for taxation of the instrumentalities of foreign commerce, *id.* at 446–49, 99 S.Ct. 1813, but we do not reach that test because the parties did not raise this issue on appeal.

**25.** Polar's claim of home port superiority is not compelled by the cases that Polar cites. For example, the holding in *Central Railroad,* 370 U.S. at 611–12, 614, 82 S.Ct. 1297, that a domiciliary situs cannot tax property to the extent that it could be taxed by another situs, does not define the limits of a non-domiciliary's right to tax.

**26.** Polar's apportionment argument rests on this characterization of the Valdez tax. There is no risk of multiple taxation if Valdez uses a port-day formula and other jurisdictions use a port-day formula, voyage-day formula (number of days in jurisdiction divided by total days in a year), or voyage-distance formula (distance traveled in a jurisdiction divided by total distance). A risk of multiple taxation only exists if we accept Polar's assertion that its domicile can extraterritorially tax its vessels for all time spent on the open seas.

Polar provides no compelling reason for us to accept this assertion. Modern precedent and the repudiation of the home port doctrine in *Japan Line,* 441 U.S. at 443, 99 S.Ct. 1813, suggest that a domicile possesses no such expansive powers. The *Japan Line* Court announced that the special status traditionally accorded a domicile "can claim no unequivocal constitutional source." *Id.* Polar's view of a domicile's ability to assert an extraterritorial tax conflicts with the tenor of *Japan Line.*

**27.** *Braniff Airways v. Nebraska State Bd. of Equalization & Assessment,* 347 U.S. 590, 593 & n. 4, 597–98, 74 S.Ct. 757, 98 L.Ed. 967 (1954). While Polar argues that the *Braniff* Court's reasoning should not be extended to ocean-going vessels, the Court's later decision in *Japan Line* largely eliminated the distinction between ocean-going vessels and other instrumentalities of interstate commerce. *Japan Line,* 441 U.S. at 442, 99 S.Ct. 1813. It is notable that the *Japan Line* Court specifically cited *Braniff* in its discussion of prior opinions whose language distinguishing ocean-going vessels based on the home port doctrine the Court rejected. *Id.* (citing *Braniff,* 347 U.S. at 600, 74 S.Ct. 757).

**28.** *Braniff,* 347 U.S. at 593 n. 4, 74 S.Ct. 757.

**29.** *Goldberg,* 488 U.S. at 260–61, 109 S.Ct. 582.

of value for the aircraft's "home port." The home port received no special consideration even though the planes likely spent time flying over non-situs states.[30]

The formula in *Ott v. Mississippi Valley Barge Line Co.*[31] also supplies an analogy. In that case the apportionment ratio compared the number of barge miles in Louisiana to the total number of barge miles in all state waters concerning the routes in question.[32] No special status, or even mention, was given to the vessels' home ports. In *Ott* the vessels' routes were from port to port on navigable rivers.[33] But if instead a vessel's regular route was from St. Louis, Missouri through New Orleans, Louisiana to Tampa Bay, Florida, it is hard to imagine that the denominator would have to include miles traveled on the high seas outside the taxing authority of any state.

There are of course many conceivable apportionment formulaé that might be fair.[34] The port-days formula is but one such example. Because the formula is fair, and accordingly a valid formula for Valdez to use, and because Valdez's permissible tax necessarily limits the taxing authority of Polar's domicile, there is no concern about the risk of duplicative taxation.[35] Because the tax is fairly apportioned, the tax is also externally consistent.

### 3. Polar waived claims of discrimination against interstate commerce and fair relation between the tax and services provided.

On appeal, Polar only devotes a single sentence to the third element of the *Complete Auto* test—whether the tax discriminates against interstate commerce—stating in its brief, "unfair apportionment itself is a form of discrimination against interstate commerce." Given the cursory nature of Polar's failure to argue this issue separately, we consider it waived.[36]

Even if we were to consider the issue on its merits, it does not appear that the vessel tax discriminates against interstate commerce. In *Moorman Manufacturing Co. v. Bair*, the United States Supreme Court held that a tax did not violate the Commerce Clause even if it resulted in an out-of-state company paying a greater portion of its income in taxes because the tax apportionment method "treat[ed] both local and foreign concerns with an even hand."[37] According to the Court, any "alleged disparity" was "the consequence of the combined effect" of multiple state statutes, and a single state was not responsible for that combined effect.[38] Like the tax in *Moorman*, the city's vessel tax applies equally to in-state and out-of-state vessels. Any effect on interstate commerce is incidental.

---

**30.** A variation on *Braniff* more dramatically illustrates the point: if an airline domiciled in New York only has flights between New York City and Los Angeles, the airline would not be subject to taxation by any jurisdiction other than New York and California. The *Braniff* apportionment formula of number of landings would accord California and New York even powers of taxation. Under the home port superiority method urged by Polar, New York, the state of domicile, would have the ability to tax a plane for all times the plane was not in California.

**31.** *Ott v. Mississippi Valley Barge Line Co.*, 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949).

**32.** *Id.* at 171, 69 S.Ct. 432.

**33.** *Id.* at 170, 69 S.Ct. 432.

**34.** *See Goldberg*, 488 U.S. at 261, 109 S.Ct. 582 (" '[W]e have long held that the Constitution imposes no single [apportionment] formula on the States,' and therefore have declined to undertake

the essentially legislative task of establishing a 'single constitutionally mandated method of taxation.' " (quoting *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 164, 171, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983))).

**35.** *See Cent. R.R.*, 370 U.S. at 614, 82 S.Ct. 1297.

**36.** *Petersen v. Mut. Life Ins. Co.*, 803 P.2d 406, 410 (Alaska 1990) ("Where a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal."); *Lewis v. State*, 469 P.2d 689, 691–92 (Alaska 1970).

**37.** *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 274, 278 n. 12, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) (upholding Iowa apportionment formula for income tax on interstate business against Due Process and Commerce Clause challenges).

**38.** *Id.*

▪ Polar also waived any argument regarding the fourth element of *Complete Auto*—whether the tax is fairly related to the services provided. Polar asserts that the tax is not fairly related to the services provided because the city's apportionment method "effectively treats a portion of [out-of-Valdez] time as if the tankers were present in Valdez." But because Polar has not briefed the issue we decline to address it.

Because Polar has attained a taxable situs in Valdez, and because the vessel tax is fairly apportioned, we hold that neither the tax nor the apportionment formula violates the Due Process Clause or the Commerce Clause.

### C. The Vessel Tax Does Not Violate the Tonnage Clause.

▪ In its cross-appeal Polar asserts that the tax violates the United States Constitution's Tonnage Clause,[39] which prohibits taxes that "operate to impose a charge for the privilege of entering, trading in, or lying in a port."[40] The superior court initially found that the tax violates the Tonnage Clause, but after vacating that judgment the superior court concluded that the tax does not violate the Tonnage Clause. In so ruling, the superior court noted that it had originally "misunderstood the taxpayer's argument on this matter." Because the parties agreed that no trial concerning the Tonnage Clause claim was necessary, and because (as the superior court noted) "counsel for the taxpayers ... clarified taxpayers' agreement that had the

tax been properly apportioned, the City has jurisdiction to tax the tankers," the superior court dismissed Polar's Tonnage Clause challenge.

▪ The United States Constitution forbids the states from, "without the Consent of Congress, lay[ing] any Duty of Tonnage."[41] A duty of tonnage is any tax or duty that "operate[s] to impose a charge for the privilege of entering, trading in, or lying in a port," regardless of whether it is measured by the tonnage of the vessel.[42] A fairly apportioned property tax is not a tonnage duty.[43]

Having concluded above that the disputed vessel tax is a fairly apportioned ad valorem tax on personal property, we necessarily also hold that it does not violate the Tonnage Clause. The vessels are taxed based on their value, and only those vessels that have acquired a taxable situs in Valdez are taxed.[44] Polar concedes that it has acquired a taxable situs in Valdez.

In *Japan Line, Ltd. v. County of Los Angeles*, the California Supreme Court sustained an ad valorem property tax on cargo containers against a Tonnage Clause challenge.[45] The California Supreme Court reasoned that the cargo containers were "not being taxed while in transit [but r]ather they [were] being taxed on an apportioned basis for their continuous presence in the state."[46] Like the containers in *Japan Line*, no single vessel is in the taxing situs of Valdez year-

---

**39.** U.S. Const. art. I, § 10, cl. 3.

**40.** *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265–66, 56 S.Ct. 194, 80 L.Ed. 215 (1935) (holding fee exacted to fund regulation of harbor not unconstitutional duty of tonnage).

**41.** U.S. Const. art. I, § 10, cl. 3.

**42.** *Clyde Mallory Lines*, 296 U.S. at 265–66, 56 S.Ct. 194.

**43.** *In re State Tonnage Tax Cases*, 79 U.S. (12 Wall.) 204, 212–14, 20 L.Ed. 370 (1870) (stating that vessels owned by individuals and used for commercial purposes are considered property and are allowed to be taxed by states and do not fall under Tonnage Clause); *Bigelow v. Dep't of Taxes*, 163 Vt. 33, 652 A.2d 985, 987–88 (1994) (holding that Vermont's tax was not tonnage tax

because it taxed property used, not privilege of using Vermont's ports).

**44.** VMC 03.12.020(A).

**45.** *Japan Line, Ltd. v. County of Los Angeles*, 20 Cal.3d 180, 141 Cal.Rptr. 905, 571 P.2d 254 (1977), *rev'd on other grounds*, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979). The United States Supreme Court held that the tax, as applied to Japanese shipping companies' cargo containers that were based, registered, and subjected to property tax in Japan, and were used exclusively in foreign commerce, violated the Commerce Clause. *Japan Line*, 441 U.S. at 453–54, 99 S.Ct. 1813. The Court therefore did not reach the Tonnage Clause question. *Id.* at 439 n. 3, 99 S.Ct. 1813.

**46.** *Japan Line*, 141 Cal.Rptr. 905, 571 P.2d at 258.

round, but as a group the tankers form a continuous presence in the city. As the California Supreme Court noted, the presence of these vessels "involves the constant use of many services provided by the (state and, here, the county); e.g., harbor facilities, roads, bridges, water supply, as well as fire and police protection." [47] Similarly, the Vermont Supreme Court upheld a personal property tax on vessels in Vermont, noting that "[t]he tax relates to police, fire, and environmental protection afforded to those who use vessels in this state." [48] Polar does not deny that municipal services are available to it in Valdez, including police, airport, civic center, and medical services. The vessel tax is therefore a legitimate property tax levied to support the services available to all taxpayers in the city, including Polar.

Polar argues that the vessel tax is invalid because it is a general revenue tax imposed only on specific vessels. But the legitimacy of the vessel tax does not depend on whether the city chooses to tax other personal property. Alaska Statute 29.45.050(b)(2) provides that "[a] municipality may by ordinance ... classify as to type and exempt or partially exempt some or all types of personal property from ad valorem taxes."

Citing *Transportation Co. v. Wheeling,*[49] Polar argues that in order to be valid, the tax must be applied to the vessels "in the same manner" as it is applied to other property. It reasons that because the vessel tax is the only personal property tax in effect in Valdez, the vessels are not being taxed in the same manner as other property. We disagree. *Wheeling* stands for the proposition that a charge based on the value of property is not a duty of tonnage.[50] Valdez taxes the vessels' value using the same mill rate it uses

for all other property, including real property.[51] It thus taxes the vessels in the same manner as other property, because the tax is based on value.

Polar contends that the vessel tax is no more than a charge for entering the Valdez port to access private facilities. Polar argues that the tax "applies only to vessels that call at the three private docking facilities in Valdez," and that it is "therefore ... a charge for being in port and *not* using the City's docking facilities." (Emphasis in original.) It compares the tax to one struck down by the California Supreme Court in *City of Oakland v. E.K. Wood Lumber Co.*[52] But *E.K. Wood Lumber* is inapt. The fee there was a flat fee, not a tax based on the value of the property.[53] The fee was imposed on all vessels landing at Oakland, regardless of whether they had obtained a taxable situs there.[54] *E.K. Wood Lumber* therefore does not persuade us that the city's ad valorem property tax is an unconstitutional duty of tonnage.

### D. Other Issues

The city asserts that the final judgment is defective because it violates separation of powers and "fails to sustain Valdez's vessel tax in accordance with the law." The city also contends that the ruling should have been modified to clarify that it applies only to Polar. Because we are reversing the judgment below and remanding for entry of judgment for the City of Valdez, we do not need to address these arguments.

Reversal also makes it unnecessary to consider Polar's argument concerning attorney's fees. On remand the city will be the prevailing party for purposes of Alaska Civil Rule 82.

---

47. *Id.*

48. *Bigelow,* 652 A.2d at 988.

49. *Transp. Co. v. Wheeling,* 99 U.S. 273, 283–84, 25 L.Ed. 412 (1878) (noting that tax is only impermissible duty of tonnage when it is taxed as instrument of commerce without reference to value of property).

50. *Id.*

51. VMC 03.12.022(A), .010, .060, .170.

52. *City of Oakland v. E.K. Wood Lumber Co.,* 211 Cal. 16, 292 P. 1076, 1080 (1930) (holding that "ordinance requiring every vessel to land at the city's wharves, or, upon paying the same charge, be entitled to a permit to land at some other wharf in the city, is not a charge, as to vessels so landing elsewhere, for facilities or services furnished by the city" and thus was unconstitutional duty of tonnage).

53. *Id.* at 1077–78.

54. *Id.*

## IV. CONCLUSION

We therefore REVERSE the judgment below and REMAND for entry of judgment for the City of Valdez.

BRYNER, Justice, not participating.